UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X

UNITED STATES of AMERICA

    -against-

KISSONE FREDERICK,

            Defendant.


--------------------------------------- X

**NOT FOR PRINT OR
ELECTRONIC
PUBLICATION**

**MEMORANDUM AND ORDER**

09-CR-258 (KAM)

**MATSUMOTO, United States District Judge:**

        Following conviction on all counts in a six-count
Indictment, defendant Kissone Frederick ("Frederick") renews his
motion for judgment of acquittal under Federal Rule of Criminal
Procedure 29(c) ("Rule 29") as to Count Three of the Indictment
which charged him with use of a firearm in relation to an
attempted armed robbery.[1]  In the alternative, Frederick moves
for a new trial under Federal Rules of Criminal Procedure 29
(d)(1) and 33 ("Rule 33").  For the reasons that follow, the
motion for judgment of acquittal and the alternative motion for a
new trial are denied.

---

[1]     At trial, Frederick moved for judgment of acquittal under Rule 29 as to
Counts Two, Three, Five, and Six.  (See Trial Transcript at 524-27.)  However,
by letter dated April 26, 2010, Frederick withdrew his motions for a judgment
of acquittal as to Counts Two, Five, and Six.  (See Doc. No. 66, Ltr. dated
4/26/10.)

## A. The Charges

In April 2009, a grand jury returned a six-count indictment charging Frederick and others with conspiracy to commit Hobbs Act armed robbery, attempted Hobbs Act armed robbery, Hobbs Act armed robbery, and related weapons charges. (See Doc. No. 59, Redacted Indictment ("Indictment" or "Ind't").)[2] Specifically, Count One of the Indictment charged Frederick with Hobbs Act Robbery Conspiracy; Count Two charged Frederick with attempted Hobbs Act Robbery of a cellular phone and check-cashing store located at 787 Rogers Avenue in Brooklyn, New York and known as Satellite Communications ("Satellite Communications"); Count Three charged Frederick with unlawful use of a firearm in relation to the attempted robbery of Satellite Communications in Count Two; Count Four charged Frederick with Hobbs Act Robbery of a gift and greeting card store located at 7005 Avenue U in Brooklyn, New York and known as Card Corner ("Card Corner"); Count Five charged Frederick with unlawful use of a firearm in relation to the armed robbery of Card Corner in Count Four; and Count Six charged Frederick with being a felon in possession of a firearm.  (See id.)

---

[2]    The original Indictment filed in this case is sealed.  (See Doc. No. 1, Indictment.)

**B. The Evidence at Trial**

At trial, the government called Gareth Hickman ("Hickman"), a cooperating witness and co-conspirator who described his and the defendant's involvement in the offenses charged in the Indictment. (<u>See</u> Tr.[3] 256-353.) Hickman testified that on Mother's Day morning, May 14, 2006, he agreed to serve as a getaway driver for his friend Pedro, who was known as 'Peso,' and was looking to "possibly commit a robbery." (Tr. 266, 269-70.) Because Hickman was employed as a cable technician, he testified that he had access to a white work van ("the van"). (Tr. 260-61.) On the morning of May 14, 2006, Hickman testified that he drove the van to pick up Pedro and two other individuals, including one known as "Blacko." (Tr. 257, 261, 272.) In court, Hickman identified "Blacko" as the defendant, Frederick. (Tr. 257-58.) Hickman testified that Pedro rode in the van's passenger seat while Frederick and the other individual rode in the back in the van's cargo area. (Tr. 275.) Hickman also recalled that on that morning Frederick was wearing blue jeans, a gray sweatshirt, and Timberland-style work boots. (Tr. 273-74.)

Hickman testified that at one point he pulled over and stopped the van and Frederick and the other individual briefly left the van to buy breakfast at a Dunkin' Donuts. (Tr. 276-79,

3

402.)  According to Hickman, during the time that Hickman and
Pedro were alone in the van, Pedro retrieved a silver, semi-
automatic handgun from the back of the van and he and Pedro
examined it before Pedro replaced the gun somewhere in the back
of the van and returned to the front passenger seat.  (Tr. 275,
279-80, 402.)  Frederick and the other individual then returned
to the van.  (Tr. 280.)

Hickman testified that he then drove to a check-cashing
store he recalled as a "Money-Gram" located at Rogers and
Martense Avenues[4] and parked the van around the corner on
Martense Avenue.  (Tr. 281-83, 384; GX-17B.)  Hickman testified
that after he parked, Pedro, Frederick, and the other individual
exited the van and rounded the corner.  (Tr. 283.)  Hickman
testified on cross-examination that he did not see who, if
anyone, took the gun from the back of the van when the three
exited the van at Rogers and Martense Avenues.  (Tr. 403.)
According to Hickman, Pedro, Frederick, and the other individual
returned to the van about two minutes later and hurriedly asked
Hickman to drive away and conveyed that their attempt to rob the
check-cashing store had been unsuccessful because the "lady
called the police."  (Tr. 283-84.)

---

[3]    "Tr." refers to the trial transcript.

[4]    The government introduced evidence showing that at the time, the "Money Gram" store located at Rogers and Martense Avenues in Brooklyn was also known as Satellite Communications.  (See Tr. 106, see also GX 2A, 17B.)

After leaving the vicinity of Satellite Communications, Hickman testified that a short time later he waited in the van again while the same group went into a card store with a plan to commit a robbery. (Tr. 287-90.) Hickman stated that the card store was located at Avenue U in the Mill Basin section of Brooklyn.[5] (Tr. 287, GX 17B.) Hickman testified that after the group returned to the van from the card store and conveyed that the attempted robbery had been successful, he attempted to drive away when he was pulled over by police responding to the robbery. (Tr. 290-95.) When he pulled over the van, Hickman testified that Pedro, Frederick, and the other individual fled the van. (Tr. 295.)

Hickman testified that he was left alone in the van and immediately arrested by the police. (Tr. 296.) While Hickman was sitting in the back of a squad car, he noticed the police searching the van and witnessed the police pull the same silver handgun he had seen earlier from the back of the van. (Tr. 297.) After his arrest, Hickman agreed to cooperate with the police and eventually to cooperate with the FBI pursuant to a cooperation agreement. (Tr. 301-07.)

The government also called Kersha Duncan Ellis ("Ellis"), a former sales clerk at the Satellite Communications

---

[5]     The government introduced evidence showing that at the time, the card store located at Avenue U in the Mill Basin section of Brooklyn was also known as Card Corner. (See Tr. 29-32, see also GX 1A, 1B, 17B.)

store to testify. (Tr. 101, 104-05.) Ellis testified that on the morning of May 14, 2006, she was sitting behind the counter at Satellite Communications when three men wearing bandanas over their faces approached the store. (Tr. 109-10.) As they approached, Ellis stated that she saw one of the men, who was wearing a hooded sweater, jeans, and Timberland-style boots, pull a small silver gun from his waist before he entered the store. (Tr. 109-10.) As soon as she saw the gun, Ellis ran to the back of the store and called the police. (Id.) Ellis testified that the men noticed that she was on the phone and abruptly left the store. (Id.) Ellis further testified that the men were in the store for not more than a minute or two and that after they left she heard screeching tires and then saw a white cable van pass the window. (Tr. 110.)

The government also introduced various still photographs and surveillance video captured by camera at the Satellite Communications store on May 14, 2006. (See GX 101 (stipulation dated 11/17/2009), 3A-1, 4A, 4B.) Ellis reviewed the photographs and video on the witness stand and pointed out one man who she noted was the man who held the gun and who was wearing a gray hoodie, blue jeans, and Timberland boots. (Tr. 115-16, GX 4A, 4B.) Ellis later stated that she "distinctly" remembered that the individual holding the gun had on Timberland-style boots which she said are typically a mustard color. (Tr.

116.) In summation, the government contended that a "fuzzy gun" was visible in the still photographs and surveillance video. (Tr. 538-39.) Additionally, when reviewing the video footage, Ellis pointed out herself in the video and described how it showed her running to the back of the store when she saw the men coming into the store with a gun. (Tr. 120, GX 3C-1.)

On cross-examination, Ellis admitted that the entire incident "all happened fast" and that she had been frightened. (Tr. 126-27.) Additionally, Ellis admitted that in preparation for trial, she reviewed some of the still photographs and video surveillance footage introduced by the government. (Tr. 124.) However, Ellis also maintained that she remembered the gun, and stated that "seeing someone take a gun out from outside the store is something you will remember." (Tr. 133.)

Two other witnesses testified that a silver automatic gun was also used during the armed robbery at the Card Corner store later on the same morning of May 14, 2006. (Tr. 29, 37-38, 62-64.)

New York City Police Officer Victor Veintimilla testified that after the cable van was pulled over by police while fleeing from the Card Corner robbery, he responded to the scene and gave chase to a black male who exited from the back of the van before the suspect was caught by another officer. (Tr. 144-50.) Another Police Officer, Robert Falcone, testified that

he actually apprehended Frederick, whom Veintimilla had been chasing, but that Frederick did not have any gun on his person at the time of his arrest. (Tr. 184-86.)

A third Police Officer, Michael Podber ("Podber"), also testified that he responded to the scene after the van was pulled over by police. (Tr. 193.) Podber testified that he searched the van at the scene and recovered a silver, semi-automatic handgun from the rear area of the van. (Tr. 195-96.) The government also introduced a photograph of a gun which Podber identified as the gun recovered from the van. (Tr. 199, GX 8.) Podber also testified that he recovered a grey hooded sweatshirt from the van, and identified both a photograph of the sweatshirt as well as the sweatshirt itself. (Tr. 212, GX 6C, 9.) In addition, Podber identified photographs of Frederick taken following Frederick's arrest when he was in a holding cell. (Tr. 221, GX 7B, 7C.) Podber described Frederick's clothing in the pictures as consisting of jeans and "tan-colored work boots." (Tr. 221, GX 7B, 7C.)

Finally, the government played an audio recording of a phone call placed by Frederick while detained in federal prison shortly before trial. (Tr. 493.) During the recording, Frederick stated "They don't even got my gun no more, son. That shit destroyed." (Tr. 493, GX 16, 16A.)

With respect to Count Three,[6] the court charged the jury that it could find Frederick guilty of violating § 924(c) either as a principal, or under an aiding and abetting theory of liability.  (Tr. 670-73.)  On December 10, 2009, following a three day jury trial, Frederick was convicted on all six counts charged in the Indictment.

## C. Motion for Judgment of Acquittal

At the conclusion of the government's case, Frederick moved pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal on Counts Two, Three, Five and Six, and the court reserved decision on that motion.  (See Tr. at 524-27.)  Frederick now renews his motion for a judgment of acquittal on Count Three only pursuant to Federal Rule of Criminal Procedure 29(c), and also moves, in the alternative, pursuant to Federal Rule of Criminal Procedure 29(d)(1) and Federal Rule of Criminal Procedure 33 for a new trial in the event that the court grants a judgment of acquittal that is later vacated or reversed on appeal.  (See Doc. No. 56, Ltr. dated 1/13/10 ("Def. Mem."); see also Doc. No. 66, Ltr. dated 4/26/10 ("Def. Supp. Mem.").)  The government opposes the motions.  (See Doc. No. 60, Ltr. dated 1/19/10 ("Gov. Mem."); see also Doc. No. 67, Ltr. dated 4/27/10 ("Gov. Supp. Mem.").)

---

[6]     The court also charged aiding and abetting liability for Counts Two, Four, and Five, which are not at issue here.

9

**DISCUSSION**

**I.  RULE 29 MOTION**

**A.  STANDARD**

A district court entertaining a motion for a judgment of acquittal must be "careful to avoid usurping the role of the jury." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003).  Indeed, "Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury." United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999) (citation omitted).  Rather, in assessing a Rule 29 motion, a court must defer to the jury's resolution of witness credibility and its selection between competing inferences that could be drawn from the evidence. See id.  This also requires the court to consider the evidence in the light most favorable to the government and to draw all permissible inferences that the jury may have drawn in the government's favor. Jackson, 335 F.3d at 180.

Consistent with this deference, a jury verdict must be upheld if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)).  In fact, "if the court concludes that

either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter." Guadagna, 183 F.3d at 129 (citation omitted). Moreover, the jury's verdict will be upheld even when it is based entirely on inferences from circumstantial evidence. United States v. Mariani, 725 F.2d 862, 865-66 (2d Cir. 1984); see also United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994). Additionally, where a jury is properly instructed on two alternative theories of liability, as here, the court must affirm the conviction when the evidence is sufficient under either of these theories. See United States v. Masotto, 73 F.3d 1233, 1241 (2d Cir. 1996), cert. denied, 519 U.S. 810 (1996).

Thus, only where the evidence that the defendant committed the crime alleged is either "nonexistent or . . . meager" may a district court grant a Rule 29 motion. Guadagna, 183 F.3d at 130 (citation omitted). Consequently, "[a] defendant who challenges the sufficiency of the evidence to support his conviction [under Rule 29] 'bears a heavy burden.'" Jackson, 335 F.3d at 180 (citation omitted).

**B. APPLICATION**

Frederick contends that the evidence at trial was insufficient to convict him of Count Three, which charged him with unlawful use of a firearm in violation of 18 U.S.C.

11

Sections 924(c)(1)(A) and 2.  18 U.S.C. § 924(c)(1)(A)[7] provides

in relevant part:

> any person who, during and in relation to any
> crime of violence . . . for which the person may be
> prosecuted in a court of the United States, uses or
> carries a firearm, or who, in furtherance of any such
> crime, possesses a firearm, shall, in addition to the
> punishment provided for such a crime of violence . . .
> be sentenced to a term of imprisonment . . .

Attempted robbery is included in the statutory definition of a

"crime of violence."  <u>See</u> 18 U.S.C. § 924(c)(3).

Additionally, any person who "aids abets, counsels,

commands, induces or procures [the] commission" of a crime is

punishable as a principal under 18 U.S.C. Section 2(a).  In this

Circuit, it is well-settled that aiding and abetting liability

demands that a defendant "consciously assisted the commission of

the specific crime in some active way."  <u>United States v.</u>

<u>Dickerson</u>, 508 F.2d 1216, 1218 (2d Cir. 1975).  Thus, in the

context of a violation pursuant to 18 U.S.C. § 924(c), a

defendant cannot be convicted as an aider and abettor "merely

because he knew that a firearm would be used or carried and, with

that knowledge, performed an act to facilitate or encourage the

robbery itself."  <u>United States v. Medina</u>, 32 F.3d 40, 45 (2d

---

[7]     In 1998, "[a]fter the Supreme Court held that "use" requires active
employment rather than mere possession, . . . Congress amended § 924(c) to
include expressly a person who, 'in furtherance of any such crime, *possesses* a
firearm.'"  <u>United States v. Cox</u>, 324 F.3d 77, 84 n.2 (2d Cir. 2003) (<u>quoting</u>
18 U.S.C. § 924(c) (emphasis added)) (<u>citing</u>, *inter alia*, <u>Bailey v. United
States</u>, 516 U.S. 137, 143 (1995); Criminal Use of Guns, Pub. L. 105-386, sec.
1, 112 Stat. 3469 (1998)).

Cir. 1994).[8]  Rather, the defendant must have "performed some act that directly facilitated or encouraged the use or carrying of a firearm."  Id.

Frederick argues that the evidence at trial would not permit any rational trier of fact to convict him of Count Three under either theory of liability – either as a principal or as an aider and abettor.  Frederick asserts that his conviction on Count Three is premised upon four factual bases – all insufficient:  (1)  Hickman's testimony that there was a silver firearm in the back of the van on the morning of May 14, 2006 fails to place the firearm in Frederick's hand – or anyone else's – during the attempted robbery of Satellite Communications; (2) the proof that Frederick participated in an armed robbery of the Card Corner shop involving a firearm is not sufficient to prove the firearm was used by Frederick in the attempted robbery of Satellite Communications; (3) an "unclear" and "fuzzy" videotape captured by the Satellite Communications surveillance cameras which shows three men approaching the store's glass window while one of the men "has his hands together and appears to be holding something" does not establish that Frederick, or anyone else, was using, carrying, or possessing a firearm; and (4) the "mistaken testimony" of Ellis who conceded that she was scared on the date

_____
[8]     Although decided prior to the amendments to Section 924(c), the analysis set forth in Medina, 32 F.3d 40, regarding aiding and abetting liability for unlawful use of a firearm under that statute still applies.  See United States

of the robbery and whose testimony was based upon her review of the "fuzzy surveillance video footage" and photographs rather than her own recollection of the day. (Def. Mem. at 2, Def. Supp. Mem. at 2.)

Essentially, Frederick appears to argue that the evidence was insufficient for a reasonable jury to have concluded beyond a reasonable doubt that any firearm was used at all during the attempted robbery of Satellite Communications. Frederick is correct that predicate to a finding of guilt on Count Three, the jury considering this evidence needed to conclude that indeed, a gun was used during the offense, either by drawing inferences, assigning weight to video surveillance footage, or finding credible the eyewitness testimony of the Satellite Communications store clerk Ellis. However, Frederick is incorrect in suggesting that the court reviewing a Rule 29 motion has the discretion to reject such reasonable inferences or re-weigh the evidence and credibility determinations made by the jury, and he is also incorrect that these four evidentiary bases are the only possible bases for the jury's finding that a firearm was employed or possessed in relation to the attempted robbery of Satellite Communications.

First, although Frederick accurately points out that Hickman's testimony does not provide any direct evidence that a

v. Gomez, 580 F.3d 94 (2d Cir. 2009) (applying Medina to assess sufficiency of

gun was used during the attempted robbery of Satellite
Communications, a reasonable jury could properly have inferred
that either Frederick or one of his co-conspirators carried a
firearm during the attempted robbery of Satellite Communications
based upon Hickman's testimony that he had observed a silver gun
in the back of the van in the vicinity where Frederick was riding
earlier that morning. (See Tr. 275, 279-80, 402.) Further,
Hickman's testimony coupled with the proof that Frederick
participated in an armed robbery involving a silver firearm at
the Card Corner shop later that morning gives rise to an even
stronger inference. (See id.; see also Tr. 29, 37-38, 62-64.)

Second, both the video footage and Ellis's testimony
provide direct evidence which a reasonable jury could have
permissibly weighted to support a finding that a firearm was used
or possessed in relation to the attempted robbery of Satellite
Communications. Regardless of Frederick's, or the court's views
regarding the clarity – or lack of clarity – in the Satellite
Communications surveillance video, after viewing the footage
themselves, the jury could have agreed with the government's
position that the footage showed one of the men holding a firearm
during the attempted robbery. (See Tr. 115-116, 538-39; GX 101,
3A-1, 3C-1, 4A, 4B.)

Moreover, although Frederick argues that the court

---

the evidence on 924(c) conviction).

should not credit the testimony of the Satellite Communications store clerk, Ellis, a court reviewing a Rule 29 motion is not at liberty to simply substitute its own credibility determination for that of the jury. See Guadagna, 183 F.3d at 129. Specifically, Frederick suggests that Ellis's testimony is untrustworthy because (i) Ellis conceded at trial that she was frightened at the time of the incident, and (ii) Ellis's memory of seeing a gun was premised upon an "after-the-fact" viewing of surveillance video footage. (Def. Supp. Mem. at 2.) Frederick therefore suggests that the court should reject her testimony as "mistaken." (Id.)

Here, the jury may properly have credited Ellis's consistent testimony that she saw one of the men pull a gun from his waistband as he approached the store prompting her to run into the back and telephone police. (See Tr. 109-10.) Ellis adamantly reiterated on cross-examination that she remembered seeing one of the robbers of Satellite Communications remove a gun from his waistband, and she emphasized that "seeing someone take a gun out from outside the store is something you will remember." (See Tr. 133.) While a reasonable jury could have found this testimony credible on its face, a jury also could have found the credibility of this testimony enhanced by Ellis's further testimony that she ran behind the counter and called the police as soon as she saw the gun, which was corroborated by both

16

the surveillance footage showing Ellis quickly moving out of the
video frame, (see Tr. 120, GX 3C-1), as well as Hickman's
testimony that when the group got back into the van after the
attempted robbery someone stated that the "lady called the
police" (see Tr. 283-84).  A jury could properly conclude that
Ellis would not have run behind the counter and called the police
had she had not seen a gun, further bolstering the credibility of
Ellis's testimony that she did in fact see a gun that morning.
Thus, a reasonable jury could permissibly credit Ellis's
testimony and conclude that a firearm was used in furtherance of
the attempted armed robbery of the Satellite Communications
store.

        Finally, the four factors identified by Frederick do
not constitute the entire universe of proof upon which a
reasonable jury may have relied in finding that a firearm was
used in connection with the Satellite Communications attempted
robbery.  Rather, the jury could have found additional support
for its finding that a silver gun was used in furtherance of the
attempted robbery of Satellite Communications based on both the
evidence that a silver gun was recovered from the back of the van
at the time of Frederick's arrest, (see Tr. 199, GX 8), and the
prison audio recording in which Frederick referred to "my gun"
(see Tr. 493, GX 16, 16A).

        The evidence supporting a finding that a firearm was

used in connection with the Satellite Communications attempted robbery still leaves open the question of whether sufficient proof exists to find that Frederick guilty beyond a reasonable doubt of that crime as either a principal or as an aider an abettor. Viewing the evidence in the light most favorable to the government, and deferring to the jury's determinations regarding credibility and weight of the evidence as this court must, it is clear that Frederick cannot meet his "heavy burden" of showing that the evidence was insufficient to convict him beyond a reasonable doubt of unlawful use of a firearm as charged in Count Three. See Jackson, 335 F.3d at 180.

There is sufficient basis for a rational jury to conclude that Frederick himself possessed the gun during the attempted robbery of Satellite Communications. Again, the jury could have inferred that that individual was Frederick in light of: (i) Ellis's testimony that she "distinctly" remembered that the individual holding the gun was wearing a grey hooded sweatshirt and Timberland-style mustard colored boots (Tr. 116); (ii) Hickman's similar testimony that Frederick was wearing a grey sweatshirt and Timberland-style work boots on the morning of the robberies (Tr. 273-74); (iii) the video surveillance footage and still photographs which showed one individual wearing what appeared to be a grey hooded sweatshirt and mustard colored shoes and, as argued by the government, depicted that individual

holding what appeared to be a gun (Tr. 538-39; GX 3A, 3C-1, 4A, 4B); (iv) the photographs taken of Frederick shortly after his arrest which show him wearing Timberland-style work boots (GX 7B, 7C); (v) Podber's testimony that a grey hooded sweatshirt was recovered from the van (Tr. 212, GX 6C, 9); and (vi) the prison audio recording in which Frederick referred to "my gun" (Tr. 493, GX 16, 16A).   This evidence provides sufficient circumstantial evidence upon which a jury could conclude that Frederick is guilty beyond a reasonable doubt as a principal of unlawful use of a firearm.[9]  See Mariani, 725 F.2d at 865-66 (jury's verdict must be upheld even when it is based entirely on inferences from circumstantial evidence).

This is simply not a case where the evidence that the defendant committed the crime alleged is either "nonexistent or . . . meager," but instead one where the jury had a sufficient basis to conclude beyond a reasonable doubt that Frederick was guilty of the crime charged in Count Three, and therefore

---

[9]     Assuming that the jury found that Frederick was not the individual holding the gun, the question of whether sufficient evidence exists to sustain a Section 924(c) conviction against Frederick on an aiding and abetting theory is a more difficult one.   See Medina, 32 F.3d at 45 (finding that knowledge alone that a firearm may be used is insufficient to support aiding and abetting conviction under Section 924(c) and noting need to consider whether the defendant's "conduct at the scene facilitated or promoted the carrying of a gun, or whether he benefitted from the gun's use").   However, when considering all the evidence in the light most favorable to the government, in light of the evidence sufficient to convict Frederick as a principal on Count Three, the court need not reach the question of whether sufficient evidence also exists to convict Frederick as an aider and abettor.   See Masotto, 73 F.3d at 1242 n.6 (declining to address aiding and abetting theory of liability in light of finding that alternative theory of liability provides sufficient evidence to sustain a Section 924(c) conviction).

Frederick's Rule 29 motion for a judgment of acquittal is denied. See Guadagna, 183 F.3d at 130 (citation omitted).

## II.   RULE 33 MOTION

A trial court has broader discretion under Rule 33 than under Rule 29 to set aside a verdict and order a new trial in order to "avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413-14 (2d Cir. 1992). Nonetheless, this discretion should be "exercised sparingly," "with great caution, and only in the most extraordinary circumstances." Id. at 1414.

The crucial question for a district court deciding a Rule 33 motion is whether "it would be a manifest injustice to let the guilty verdict stand." Id. (citation omitted). A "manifest injustice" occurs where a trial court cannot be satisfied that "competent, satisfactory and sufficient evidence" supports the jury's finding of guilt beyond a reasonable doubt, and where a "real concern" exists "that an innocent person may have been convicted." Id.

As detailed above, where, as here, ample competent, satisfactory, and sufficient evidence exists from which a reasonable jury could have found Frederick's guilt beyond a reasonable doubt, there can be no "real concern" that "an innocent person may have been convicted." See id. Where there is no "manifest injustice" in allowing the guilty verdict to

stand, the court does not have discretion to order a new trial pursuant to Rule 33, and Frederick's motion for a new trial must be, and is, denied.

## CONCLUSION

For the foregoing reasons, Frederick's motion for a judgment of acquittal on Count Three, or alternatively a new trial, under Rules 29 and 33 of the Federal Rules of Criminal Procedure, is denied.

**SO ORDERED.**

Dated:    June 14, 2010
          Brooklyn, New York

                                  _____ /s/_____
                                    **Kiyo A. Matsumoto**
                                    United States District Judge