UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     V.                                         09 Cr 258 (KAM))

KISSONE FREDERICK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SUPPLEMENTAL  MEMORANDUM ON LAW IN SUPPORT OF DEFENDANT KISSONE FREDERICK'S RULE 33 MOTION

JOYCE C. LONDON, Esq
JOYCE C. LONDON, P.C..
20 Vesey Street, Suite 400
New York, New York 10007
(212) 964-3700
         -and-

Megan W. Benett, Esq.
Kreindler & Kreindler, LLP
750 Third Avenue
New York, NY 10017

*Attorneys for Defendant*
*FREDERICK KISSONE*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,

      - v -                            09 Cr. 258 (KAM)

KISSONE FREDERICK,

      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
## OF KISSONE FREDERICK'S RULE 33 MOTION

**I.**    **INTRODUCTION**

This Supplemental Memorandum of Law is submitted in reply to the Government's

Response in Opposition to Defendant Kissone Frederick's Rule 33 Motion and to address the

relevance of facts adduced at the Rule 33 hearing held on April 12, 2012. Based on the papers

previously submitted and the additional facts adduced at the hearing, it is apparent that Mr.

Frederick was denied the effective assistance of counsel during plea negotiations in several

respects, the net effect of which has resulted in Mr. Frederick's facing a mandatory statutory

sentence of at least 47 years.

Under recent Supreme Court case law, the appropriate remedy for this ineffective

assistance of counsel is vacatur of the jury verdict and reinstatement of the original plea

agreement put forth by the Government, which carried an agreed-upon statutory sentencing range

of seven years to life in prison, with a stipulated sentencing guidelines range of 161 - 180 months.

**II.**    **RELEVANT FACTS**

    1.    <u>Mr. Frederick's Sworn Statements</u>

By sworn affidavit dated November 14, 2011, Mr. Frederick claimed primarily that

-    he was unaware that he would be facing a mandatory consecutive sentence of at least 32 years were he to proceed to trial and be convicted of the two gun charges (Counts Three and Five);

-    he was not informed that he would receive credit on his federal sentence for the time which he had already spent in state custody on his conviction to a lesser included charge relating to Count Two;

-    during plea negotiations he did not know that his state court conviction to the Card Store robbery would be introduced into evidence against him at his federal trial;

-    if he were convicted of being a felon-in-possession of a firearm as charged in Count Six, he would be deemed an armed career offender and subject to an additional statutory fifteen year sentence to be followed by the 32-year consecutive sentence on the guns charges for a total statutory mandatory minimum sentence of 47 years; and that his advisory guidelines would sky-rocket to 360 months to life imprisonment;

-    had he been aware of these consequences of being convicted on all counts after trial, he would have pled guilty instead of going to trial.

2.    <u>Trial Counsel's Testimony</u>

At the Rule 33 Hearing on April 12, 2012, Ephraim Savitt, Esq. testified that he was assigned to represent Mr. Frederick under the Criminal Justice Act as of the date Mr. Frederick was writted from state court to federal court on the instant charges and that he also represented Mr. Frederick during plea negotiations and at trial.

Although Mr. Savitt firmly disputed Mr. Frederick's claim that he was not advised that he would be facing a 32-year consecutive sentence on the two gun counts if he were convicted at trial, he did not dispute Mr. Frederick's other claims.

Specifically, Mr. Savitt testified that he did not tell Mr. Frederick that Mr. Frederick would get credit for the state time he had already served on the related charge. *See* Hearing T. at 32-33.[1]  He further testified that Mr. Frederick was not informed that his state court conviction on

---

[1]    "Hearing T." followed by a number refers to the page of the Rule 33 Hearing Transcript.

the related charge would be introduced as evidence at the federal trial as this issue was raised by the government in a pre-trial motion *in limine* which post-dated the government's letter withdrawing their plea offer. *See* Hearing T. at 36. Additionally and significantly, Mr. Savitt testified that he did not discuss any of the ramifications of Mr. Frederick's conviction of being a felon in possession of a firearm. He did not explain the import of this potential conviction including how it could drastically affect both Mr. Frederick's statutory exposure and his guideline sentencing range.

Finally, although Mr. Savitt testified that Mr. Frederick was not willing to consider any plea offer, counsel's emails to the government concerning plea discussions with Mr. Frederick indicate otherwise. When first confronted with the plea offer of 13 - 15 years, Mr. Frederick's response was that he would take 8 years. Two weeks later, the email exchanges between Mr. Savitt and the government indicate that Mr. Frederick was now willing to take a 10-year offer.

Additionally, Mr. Savitt testified that he did not do an independent guidelines calculation for Mr. Frederick, on the Hobbs Act charges. *See* Hearing T. at 28. Nor did he provide Mr. Frederick with a letter setting forth in detail his likely sentence after conviction of all counts at trial. *See* Hearing T. at 29.

III.   **ARGUMENT**

Under longstanding Supreme Court precedent, a defendant is entitled to effective assistance of counsel during the course of deciding whether to plead guilty or whether to go to trial. *See McMann*, 397 U.S. at 770. Competent counsel is necessary for a defendant to determine, among other things, what the prosecutor may be able to prove during a trial and how that proof would be made. These assessments are a core component of the plea bargaining process. *See Premo v. Moore*, 131 S.Ct. 733, 741 (2011) (noting that "plea bargains are the result

3

of complex negotiations suffused with uncertainty," during which attorneys must "make careful strategic choices in balancing opportunities and risks.")

      1.    <u>Mr. Frederick Was Denied the Effective Assistance of Counsel During Plea Negotiations</u>

     Kissone Frederick was denied the effective assistance of counsel when his trial lawyer failed to recognize that Mr. Frederick was subject to a statutory mandatory minimum fifteen year sentence pursuant to the Armed Career Criminal Act ("ACCA") if he was convicted of being a felon in possession of a firearm (Count Six), *see* 18 U.S.C. §924(e), and, further, that as a function of statute and law the 32-year statutory sentence on the two 924(c) offenses would have to run consecutively to the mandatory fifteen year sentence for a total statutory mandatory sentence of at least 47 years. Additionally, counsel unreasonably failed to inform Mr. Frederick that the Court could and would likely credit him with the considerable time (about three years at that time) he had already served on his related state sentence, which failure was a key factor in Mr. Frederick's rejection of the plea offer, further prejudicing Mr. Frederick.

     As Mr. Frederick's counsel stated in his affidavit and testified at hearing, he did not consider that Mr. Frederick would be subject to the ACCA and he did not advise Mr. Frederick of the incarceratory consequences of the ACCA. Given the information that the Government and defense counsel had or should reasonably have had prior to trial, the failure to advise Mr. Frederick of the ACCA constitutes performance that fell below an objective standard of reasonableness. This failure to adequately advise Mr. Frederick about the likelihood of his being an armed career offender resulted in exposure to a mandatory minimum sentence of at least fifteen years more than the defendant was led to believe by his trial counsel during the course of plea negotiations. The disparity between the 32 years Mr. Frederick was told was his maximum

4

exposure during the plea negotiations and the mandatory minimum 47 years he was actually facing constitutes prejudice under the ineffective assistance of counsel analysis.

Pursuant to the analysis set forth by the United States Supreme Court in *Strickland v. Washington*, to be entitled to relief on a claim of ineffective assistance of counsel, a "defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). The Sixth Amendment guarantee of effective assistance of counsel extends to consideration of a plea agreement. *See Lafler v. Cooper*, 566 U.S. --- , 132 S.Ct. 1376 (2012); *see also Missouri v. Frye*, 566 U.S. --- , 132 S.Ct. 1399 (2012); *Padilla v. Kentucky*, 559 U.S. --- , 130 S.Ct. 1473 (2010). These rights may be violated by counsel's pre-trial ineffectiveness even if "the trial is, on the whole, fair." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 145 (2006). Where counsel does not offer adequate advice regarding the procedural and substantive consequences of rejecting or accepting a plea agreement, counsel's performance is objectively unreasonable. *Padilla*, 559 U.S. --- , 130 S.Ct. at 1486. As the Supreme Court recently confirmed, deficient performance that results in "nonacceptance of a plea offer" leading to further proceedings and a less favorable outcome warrants relief under the Sixth Amendment. *See Lafler v. Cooper*, 566 U.S. --- , 132 S.Ct. at 1383 ; *see also Missouri v. Frye*, 566 U.S. --- , 132 S.Ct. 1399.

Because Mr. Frederick's trial counsel's performance fell below an objective standard of reasonableness and because counsel's failings resulted in a substantially longer mandatory prison term that Mr. Frederick would have had to have served under the plea agreement, the defendant is entitled to relief here.

a.   Counsel's Performance Fell Below an Objective Standard of Reasonableness

5

It is well-settled that defendants are "entitled to the effective assistance of competent counsel during plea negotiations." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). Given the substantial percentage of criminal prosecutions that are resolved by guilty pleas, "[i]n today's criminal justice system, ... the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Frye*, 566 U.S. --- , 132 S.Ct. at 1407. Indeed, the criminal justice system has become "for the most part a system of pleas, not a system of trials" and the adequacy of advice during the plea negotiation stage critically important. *Id.* "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Id.*

In light of the critical importance of plea negotiations to criminal defendants, effective assistance of counsel at this stage of the proceedings includes meaningfully and adequately advising a client of the ramifications of rejecting a plea offer. *See Lafler*, 566 U.S. --- , 132 S.Ct. at 1384 - 1395 (trial counsel's legal error during plea negotiations satisfies the performance prong of *Strickland v. Washington*); *United States ex rel. Hill v. Termullo*, 510 F.2d 844, 847 (2d Cir. 1975) (advice from counsel turning on a mistaken conclusion regarding mandatory minimum sentence constitutes inadequate performance).

In this case, trial counsel testified that he iinformed Mr. Frederick that he would be sentenced to at least 32 years in prison were he to lose after going to trial. *See* Hearing T. at 27 - 29. Mr. Savitt's advice was, however, incorrect and was based on errors that were "ultimately knowable," thus warranting a remedy here. *Termullo*, 510 F.2d 844, 847 (2d Cir. 1975).

6

While Mr. Frederick may have been adequately advised that he was facing the possibility of a mandatory minimum 32 year sentence were he to be convicted of the two 18 U.S.C. § 924(c) counts with which he was charged, it is undisputed that he was not told of the certainty of that 32 year sentence running consecutive to the 15 year mandatory minimum he would face under 18 U.S.C. § 924(e) for his conviction of being a felon in possession of a firearm (Count Six). *See* Savitt Decl., Docket No. 90, ¶ 13 ("It is true that I did not discuss the subject of Armed Career Criminal offender status with Frederick.")  Under the Armed Career Criminal Act, "a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense ... committed on occasions different from one another ... shall be imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1).  As trial counsel conceded during the hearing, given Mr. Frederick's prior state court felony conviction and the video of Mr. Frederick in possession of a firearm in the instant case, along with the expected testimony from Mr. Fredericks's co-defendants supporting that charge, a conviction under 18 U.S.C. § 922(g) for being a felon in possession of a firearm was almost a foregone conclusion.  It was, therefore, a near certainty that Mr. Frederick was going to be subject to the sentencing consequences of being deemed an Armed Career Criminal.  Yet he was indisputably never advised of this fact.   That is, at the time that Mr. Frederick was considering the Government's plea agreement, his defense lawyer had failed to identify the possibility that his sentencing exposure post-trial would <u>start</u> at 47 years and could only go higher.

While trial counsel and the Government have both stated that they were not on notice of the full extent of Mr. Frederick's youthful offender adjudications, which form the basis for the Pre-Sentence Investigation Report's conclusion that he is an Armed Career Criminal for purposes

7

of the fifteen year mandatory minimum sentence, these assertions are undermined by pre-trial communications with the Court.

On October 20, 2009, three weeks prior to the Government formally withdrawing its proposed plea agreement, the prosecutor in this case wrote to the Court to describe Mr. Frederick's criminal background, in the context of its application to introduce evidence of prior bad acts and prior convictions pursuant to Federal Rules of Evidence 404(b), 608(b) and 609(a). *See* 10/20/09 Government Letter, Docket No. 10, (Hearing Exhibit G). In that letter, the Government stated that Mr. Frederick was involved in two separate attempted robberies in September 2003, a January 4, 2005 firearm possession case and a January 17, 2005 attempted armed robbery. *See id.*, pp. 4 - 5. It is therefore clear that as of October 20, 2009, (a date before the Government's letter withdrawing the plea offer), both the government and trial counsel were or should have been aware of the possibility that Mr. Frederick had three prior convictions for violent felonies that would expose him to the mandatory minimum 15 year sentence of the Armed Career Criminal Act.[2]

In this case, during the critical stage of advising Mr. Frederick as to the risks of rejecting the Government's plea agreement, trial counsel failed to recognize the full consequence of going to trial and losing. That risk was not, as he told the defendant, a minimum sentence of 32 years in prison but, rather, a statutorily required sentence of 47 years -- nearly half again as long. This

---

2 Any "mutual mistake" that the Government and defense counsel may purport to have made regarding Mr. Frederick's prior criminal history and the application of the ACCA should not excuse trial counsel's failure to adequately advise Mr. Frederick about the risks of going to trial. Even without the Government's Oct. 20, 2009 letter, Mr. Fredericks's criminal history and personal background showing that he dropped out of high school and had prior offenses committed before he was 18 years old should have put defense counsel on notice of the possibility of other, unreported non-adult criminal adjudications in Mr. Frederick's past.

error was apparent from a plain reading of the ACCA and a full consideration of the information that the parties knew (or at least should have known) regarding Mr. Frederick's criminal history. Misinformation about a statutory mandatory minimum renders the assistance of counsel ineffective. *See Termullo*, 510 F.2d at 847 ("Misinformation about a mandatory minimum is no less demonstrative of counsel's incompetence, nor necessarily less significant to a defendant's decision to plead guilty, than an error about a statutory maximum. In both instances, counsel is not being second-guessed about a prediction which has proven inaccurate but, rather for a misstatement of easily accessible fact.")   Trial counsel's failure to identify for Mr. Frederick the true risk he faced by going to trial denied the defendant of the effective assistance of counsel during the plea negotiation process.3 The only remaining question, then, is whether Mr. Frederick was prejudiced by this ineffectiveness.

b.   <u>Mr. Frederick Suffered Prejudice as a Result of Trial Counsel's Ineffectiveness</u>

With respect to prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the context of deficient representation during the plea process, Sixth Amendment prejudice is established where "a plea offer has ... been rejected because of counsel's deficient performance" if there is a "reasonable probability [the defendant] would have

---

3 Notably, Federal Rule of Criminal Procedure 11(b)(1)(H) mandates that federal courts advise and question criminal defendants about any mandatory minimum penalty before accepting a guilty plea.  This is a change from the prior Rule 11 which simply required a court to inform the defendant of the "consequences of the plea." Rule 11, 1974 Adv. Cmte. Notes.  The newer language was intended to satisfy the "objective ... to insure that a defendant knows what minimum sentence the judge must impose" and thus helps to ensure that a plea is entered knowingly and voluntarily. *Id.*  The same logic should apply to rejecting a plea -- without correct information about the shortest mandatory sentence and longest possible sentence facing a defendant who may reject a plea, the defendant may not be competent to make a knowing and informed decision as to whether to forego that plea and proceed to trial.

9

accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Frye*, 566 U.S. --- , Slip Op. at 11.[4]  Objective evidence of prejudice can be established not only by a defendant's own assertions, but also by a substantial disparity between the sentence offered in a plea agreement and the sentence actually imposed after trial. *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011).  Indeed, "[a]ny additional amount of jail time is significant for purposes of showing prejudice." *United States v. Rivas-Lopez*, --- F.3d --- (5th Cir. 2012), 2012 WL 1326676, *2 (5th Cir. April 18, 2012) (reversing denial of section 2255 petition and remanding for evidentiary hearing); *see also Purdy v. United States*, 208 F.3d 41, 49 (2d Cir. 2000); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999).

As Mr. Frederick stated in his affidavit -- and as confirmed by defense counsel's declaration and testimony -- trial counsel did not advise him that he might be subject to the sentencing requirements of the ACCA. *See* Frederick Affidavit, 12 Cv. 1171, Docket No. 1-2, ¶ 12.  Had he been aware of the drastically enhanced sentencing consequences he faced following a jury verdict, he would not have proceeded to trial. *Id.*, ¶ 13.

Mr. Frederick's statement that, but for counsel's improper advice, he would have accepted the plea offer, is, in this case, supported by other "objective evidence" in the form of the vast disparity between the 13 ½ to 15 years he was originally offered and the 47 mandatory minimum

---

4 A defendant must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. *Id.*  There is no evidence that the prosecution here would have withdrawn the plea agreement or that this Court would not have accepted it.  To the contrary.  The Government expressly stated that the plea agreement was open until November 6, 2009.  *See* Docket Entry No. 14, Government Letter dated October 29, 2009; (Hearing Exhibit E).  Further, this Court accepted guilty pleas from Mr. Frederick's co-defendants in which the parties had agreed to substantially shorter sentences than that proposed in Mr. Frederick's case.  There should be no reason to doubt, therefore, that had Mr. Frederick accepted the Government's offer before November 6, 2009, the plea and sentence would have proceeded as set forth in the Government's proposal.

10

sentence he is now facing. *See Raysor*, 647 F.3d at 495 ("*Prima facie* evidence may include a petitioner's own statement as was offered here; however in order for a statement to be sufficiently credible to justify a full hearing, it must be accompanied by some 'objective evidence' such as a significant sentencing disparity, that supports an inference that the petitioner would have accepted the proposed plea offer if properly advised"); *see also Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) (remanding for an evidentiary hearing on ineffective assistance because prejudice could be found based on the "undisputed sentencing disparity of at least 113 months between the high end of the government plea offer [of 78 to 97 months] and Pham's sentence [of 210 months] after a trial conviction"); *Gordon*, 156 F. 3d at 381 (finding the disparity between the 84 months offered in the plea agreement and the actual sentencing range of 262 - 327 months as "sufficient objective evidence . . . to support a finding of prejudice under *Strickland*."); *see also Mask v. McGinnis*, 233 F.3d 132, 142 (2d Cir. 2000) ("[A] large disparity between the defendant's sentence exposure following a trial and his potential exposure had a plea offer been made . . . coupled with [defendant's] statements that he would have accepted a reasonable offer as credited by the district court, satisfies the prejudice requirement.").

While Mr. Frederick was not willing to accept the terms of the plea that the Government proposed, it is clear that he was moving from a point of intransigence to one of somewhat more reasoned thinking. Indeed, between October 13, 2009 and October 27, 2009, with no further prodding from defense counsel, Mr. Frederick on his own came to terms with an additional two years in prison -- being willing to agree to a resolution that would include a ten year sentence as opposed to the eight years he initially asserted was the most time he would consider. *See* Hearing T. at 25, 31. Even trial counsel recognized that Mr. Frederick was "getting closer to the 15 [years] or 13 [years]" in the plea agreement, even if he was not quite there yet. *Id.*, p. 31.

11

Significantly, had Mr. Frederick been informed by counsel that under Guideline § 5G1.3, the Court was authorized to make Mr. Frederick's federal sentence run concurrently with his state court sentence as of the date of his federal sentencing and to give him credit for the time he had served in state custody which would not be credited by the Federal Bureau of Prisons under its calculation regulations, Mr. Frederick's desire for a ten-year sentence could be accomplished under the plea offer,  The application of this credit would have effectively lowered Mr. Frederick's sentence by about 3 years to a term of imprisonment totally in keeping with the amount of time Mr. Frederick had acknowledged he was willing to accept.  Mr. Savitt, however, did not speak to Mr. Frederick again between the defendant's statement that he would serve ten years and the Government's withdrawal of its plea agreement.

c.  <u>Mr. Frederick Has Met His Burden of Establishing Ineffective Assistance of Counsel</u>

Notwithstanding the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, it is submitted that in this instance, counsel's conduct was below that range.

First, based upon Mr. Frederick's affidavit, he did not make clear to Mr. Frederick that if he were to be convicted on all counts at trial, he would face not just one mandatory consecutive sentence of seven years but a second mandatory consecutive sentence of 25 years.

Secondly, he did not advise Mr. Frederick that if he were to proceed to trial, there was a strong likelihood that his state court conviction on the Card Store robbery would be introduced into evidence against him, making it virtually certain that he would be convicted on all counts relating to that robbery (including the gun count).

Thirdly, as counsel acknowledged in his hearing testimony, he did not do an independent guidelines calculation on the Hobbs Act charges. *See* Hearing T. at 28.  Thus, he did not inform

12

Mr. Frederick that the Government's guideline calculations could be wrong in that the guidelines calculations on the Hobbs Act robbery conspiracy included only a guidelines calculation for one robbery when, in fact, both the completed Card Store robbery and the attempted phone store robbery would be construed by the Pre-Sentence Report to entail at least two victims or, as set forth in the Pre-Sentence Report, three victims as two persons were robbed in the course of the Card Store robbery even though it was charged as only one robbery.

Fourthly, he did not inform Mr. Frederick that if he went to trial and was convicted of being a felon in possession of a firearm (Count Six), he would be deemed an armed career criminal offender and thus subject to severe increases in his advisory guideline sentencing range sky-rocketing his guideline sentencing range on the robbery conspiracy and related substantive counts from 77 to 96 months as set forth in the plea agreement to 360 months to life to be followed by the mandatory consecutive sentences on the two gun counts.

Fifthly, trial counsel failed to inform Mr. Frederick that the guidelines contained a provision pursuant to which Mr. Frederick could obtain credit for the time he had already spent in state custody on one of the same charges and that even though this provision was not part of the plea agreement, counsel could nevertheless request the credit at sentencing.

All of these considerations should have been fully discussed with Mr. Frederick in order for him to make an informed decision of whether to accept the guilty plea. However, they were not. As Mr. Frederick has stated in his affidavit, had he been made aware of the strong probability of all these consequences resulting from his conviction after a trial by jury, he would have accepted the plea offer and not proceeded to trial.

13

d.   <u>The Appropriate Remedy is to Vacate the Convictions and Order the Government to Offer the Original Plea Agreement</u>

As the Supreme Court explained in *Lafler*, once a Sixth Amendment violation leading a defendant to reject a plea offer has been established, the various remedial options include ordering "that the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Lafler*, 566 U.S. ----, 132 S.Ct. at 1389.   Ordering the term of imprisonment originally offered is particularly appropriate where, as here, "an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial ... ." *Id.*

First, if this Court concludes that Mr. Frederick was denied the effective assistance of counsel, the verdict here must be vacated as the "mandatory sentence confines a judge's sentencing discretion" and, thus, "a resentencing based on the conviction may not suffice" to remedy the constitutional deprivation. *Cooper*, 566 U.S. --- , 132 S.Ct. at 1389.  Here, Mr. Frederick is facing a mandatory minimum sentence of 47 years in prison, a mandatory sentence more than three times what he was offered under the terms of the Government's plea offer. Because, as a matter of statue and law, the Court cannot sentence him below that term, any remedy would have to begin with vacatur of the jury verdict.

Secondly, the Court should then "require the prosecution to reoffer the [original] plea proposal." *Id.*  Doing so in this case would be consistent with the most common form of relief offered in other state and federal cases involving foregone plea offers. *See, e.g., Satterlee v. Wolfenbarger*, 453 F.3d 362 (6th Cir. 2006) (affirming grant of habeas writ requiring

14

reinstatement of plea offer and subsequent grant of unconditional writ ordering defendant's release); *Hoffman v. Arave*, 455 F.3d 926 (9th Cir. 2006) (in habeas proceeding, ordering "the district court to direct the State to release [the defendant] unless … the State offers [the defendant] a plea agreement with the 'same material terms' offered in the original plea agreement"); *Wanatee v. Ault*, 2000 WL 34032913, *8 (N.D.Iowa) (trial attorney's failure to advise defendant that he would be subject to a life sentence if convicted after trial rendered assistance during plea negotiations ineffective; appropriate remedy was to "enforce the [earlier] plea agreement and allow [the defendant] to plead to second-degree murder."), *aff'd*, 259 F.3d 700 (8th Cir.); *People v. McCauley* 782 N.W.2d 520, 525 (Mich.App. 2010) (appropriate remedy was to "conditionally vacate defendant's convictions and sentences and remand theis case to allow the prosecution to reinstate its original plea offer, and to allow defendant, with the assistance of counsel, to consider that offer and enter a plea in accordance with its terms"); *Jiminez v. State*, 144 P.3d 903 (Okla. Crim. App. 2006) (ordering a modification of defendant's sentence).

Further, facilitating the offering of the original plea agreement would alleviate any concern that a higher sentence proposed by the government might be motivated by "prosecutorial vindictiveness." *See Magana v. Hofbauer*, 263 F.3d 542 (6th Cir. 2001) (reversing district court's denial of ineffective assistance of counsel claim in case where trial lawyer failed to adequately advise defendant of sentencing consequences post-trial; upon vacating conviction "prosecution was free to offer the defendant another plea bargain, but ... any plea offer in excess of the original offer must overcome a rebuttable presumption of prosecutorial vindictiveness"); *Turner v. Tennessee*, 858 F.2d 1201, 1204 (6th Cir. 1988) (ordering a "new plea hearing during which a rebuttable presumption of vindictiveness would attach to any plea offer made by the State in excess of its original … offer.")

15

Here, to put Mr. Frederick in the position he would have been but for the ineffective assistance of counsel and to avoid any claim of prosecutorial vindictiveness, the defense respectfully requests that this Court vacate the jury verdict and direct the Government to reoffer the original plea agreement.

    2.    <u>The Facts of This Case Warrant a Finding of "Excusable Neglect" under Rule 33</u>

By letter dated April 9, 2012, the government argued that "defendant's submission is insufficient to support a finding of 'excusable' neglect to justify the filing of the instant motion on the eve of his sentencing.", Gov't Ltr dated 4/9/2102 at 2, Docket No. 96, citing *United States v. Midyett*, 07 cr 874 (KAM), 2010 WL 1992191 (E.D.N.Y. May 14, 2010) and *United States v. Urena*, S3 05 Cr. 0760 (PKC), 2008 WL 2229847 (S.D.N.Y. May 29, 2008).

Both cases cited by the government are distinguishable here. In *Midyett*, this Court determined that the factual basis upon which the defendant moved for a new trial was known to the defendant before his conviction. Thus, there was no basis to conclude that defendant's delay in seeking a new trial was due to excusable neglect. Notwithstanding this finding, the Court also held that defendant's Rule 33 motion was substantively without merit. *Id.*

Similarly, in *United States v, Urena*, the district court found that the defendant had not demonstrated "excusable neglect" determining that the government would be greatly prejudiced by the defendant's delay should a new trial be granted. *Urena, supra*, at 2. Unlike the defendants in both cases cited, Frederick is not seeking an actual new trial. Rather, he is seeking to have the jury verdict vacated so that, now properly informed, he can enter a guilty in lieu of having a new trial.

Moreover, were the Court to deny Mr Frederick's Rule 33 motion based on a finding that there was no "excusable neglect, Mr. Frederick would still have the right to raise the same issues

16

in a § 2255 petition since they center on the Sixth Amendment issue of whether Mr. Frederick

received effective assistance of counsel during plea negotiations.   In this regard, the Second

Circuit's reasoning in *United States v. Santini*, 140 F.3d 424 (2d Cir. 1998) is instructive.   There,

before sentencing, the defendant filed a Rule 33 and a § 2255 motion both seeking a new trial on

the grounds of ineffective assistance of counsel.    The district court denied the motions, holding

that the Rule 33 motion was untimely and that the 2255 motion was not sufficient factually

supported. *Stantini* at 425.  Subsequently, after both sentencing and direct appeal, the defendant

filed a second § 2255 motion which was then transferred from the district court to the Second

Circuit for determination of whether the defendant would be granted leave to file a second or

successive § 2255 motion.  The Second Circuit then deemed the defendant's first, pre-sentencing

§ 2255 motion to have been made pursuant to § 2241 since the defendant had not yet been

sentenced as is required by a § 2255 motion.

Similarly, in *United States v. White*, 371 F. Supp.2d 378 (W.D.N.Y. May 31, 2005), the defendant

filed a Rule 33 motion to vacate and set aside the jury verdict based on ineffective assistance of

trial counsel which occurred during plea negotiations prior to trial.  Although the district court

found the motion under Rule 33 to be untimely, the court suggested that the proceeding should be

viewed as a habeas corpus petition pursuant to 28 U.S.C. §2241.  In *White*, the government

argued that the proceeding was premature and that the defendant should proceed to sentencing.

The district court, however, disagreed, stating:

> I believe that the Court can and should resolve this issue now.  The
> ineffective representation during the plea negotiations is so stark and
> obvious that it should be rectified before the Court proceeds further.  The
> error relates to the failure to properly warn [defendant] of the consequences
> he faced in going to trial.  At this stage, [defendant] is not challenging any
> trial errors or ineffective assistance at the trial.  Therefore, it would be a
> colossal waste of judicial resources to compel both the defendant and the

17

> Government to proceed to sentencing and appeal to raise this issue when I
> have already determined that his lawyer's ineffective assistance violated
> [defendant's] Sixth Amendment right to receive proper counsel and advice
> in determining whether to accept the Government's plea offer.

*White*, *supra* at 383.

The rational of *White* is equally applicable here.  Although this Court has not yet made a determination on the ultimate issue of whether Frederick received effective assistance of counsel, a factual hearing has already been held and the issue is now ripe for decision.

Accordingly, it is respectfully submitted that defendant Frederick has demonstrated "excusable neglect" with respect to Rule 33 requirements, and it is further submitted that his failure to file the Rule 33 motion earlier in the post-trial proceedings has not unduly prejudiced the government since Mr. Frederick is not seeking a new trial and that it would be a waste of judicial resources to compel Mr. Frederick to proceed to sentencing and appeal and then subsequently raise the identical issue on a § 2255 petition.

18

## IV.  <u>CONCLUSION</u>

For all the reasons set forth herein and set forth in Mr. Frederick's opening Rule 33

motion and supporting documents, the jury verdict should be vacated and Mr. Frederick should be

permitted to enter a plea of guilty pursuant to the terms of the government's plea offer.

Dated: New York, New York
       May 7, 2012

Respectfully submitted,

*Joyce C. London*

JOYCE C. LONDON, Esq.
Joyce C. London, P.C.
20 Vesey Street, Suite 400
New York, NY 10007
(212) 964-3700

-and-

Megan W. Benett, Esq.
Kreindler & Kreindler, LLP
750 Third Avenue
New York, NY 10017

*Attorneys for Defendant*
*FREDERICK KISSONE*

19