UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

UNITED STATES OF AMERICA                    **MEMORANDUM AND ORDER**

        - against -                          09-CR-258 (KAM)

KISSONE FREDERICK,

               Defendant.
--------------------------------X

**MATSUMOTO, United States District Judge:**

        On December 10, 2009, defendant Kissone Frederick

("defendant") was convicted by a jury of all counts of a six-

count Indictment charging defendant and others for crimes in

connection with two Hobbs Act armed robberies and related

firearms charges.  Presently before the court is defendant's

Federal Rule of Criminal Procedure 33 motion for a new trial

asserting that he was denied the effective assistance of counsel

during pretrial plea negotiations in violation of the Sixth

Amendment.

        Having considered the appropriate burdens of

production and proof, the testimony of witnesses at a hearing

conducted on April 12, 2012, the hearing exhibits, the parties'

written submissions, and having resolved issues of credibility,

the court denies defendant's motion in its entirety for the

reasons discussed below.

## I.    BACKGROUND[1]

### A.    Arrest and State Prosecution

On March 14, 2006, defendant was arrested by New York City Police Department officers in connection with the offenses for which he was subsequently convicted in federal court, which are described below.  (*See* Presentence Investigation Report ("PSR"), Exhibit C to Petition for Habeas Corpus, No. 12-CV-1171, *Frederick v. United States* (E.D.N.Y. Mar. 9, 2012), ECF No. 2 ¶ 17.)  He was separately and previously prosecuted in Brooklyn Supreme Court and pleaded guilty to Attempted Robbery in the Second Degree, for which he was sentenced to five years imprisonment in October 2007.  (*Id.* ¶¶ 17, 75-76.)  On May 7, 2009, defendant was arrested in connection with the instant federal case.  (*Id.* ¶ 17.)

### B.    The Federal Charges

On April 24, 2009, a grand jury returned a six-count Indictment charging defendant and others with a conspiracy to commit Hobbs Act armed robbery, attempted Hobbs Act armed robbery, Hobbs Act armed robbery, and three related weapons charges.  (*See* ECF No. 59, Redacted Indictment ("Indictment").)[2] Specifically, Count One of the Indictment charged defendant with

---

[1]    The court assumes the parties' familiarity with the facts and prior opinions of this court in this matter and only the background relevant to the instant motion is set forth below.

[2]    The original Indictment filed in this case is sealed.  (*See* ECF No. 1, Indictment.)

a Hobbs Act Robbery Conspiracy in or about May 2006 in violation of 18 U.S.C. § 1951(a).  Count Two charged defendant with an attempted Hobbs Act Robbery on May 14, 2006 of an employee of a cellular phone and check-cashing store located at 787 Rogers Avenue in Brooklyn, New York known as Satellite Communications (the "Satellite Robbery") in violation of 18 U.S.C. §§ 2, 1951(a).  Count Three charged defendant with unlawful use of a firearm in connection with the attempted Satellite Robbery in Count Two in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(i). Count Four charged defendant with a Hobbs Act Robbery on May 14, 2006 of two employees of a gift and greeting card store located at 7005 Avenue U in Brooklyn, New York known as Card Corner (the "Card Robbery") in violation of 18 U.S.C. §§ 2, 1951(a).  Count Five charged defendant with unlawful use of a firearm in connection with the Card Robbery in Count Four in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii).  Finally, Count Six charged defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

At defendant's arraignment on May 12, 2009, Ephraim Savitt, Esq. ("Mr. Savitt") was appointed to represent defendant pursuant to the Criminal Justice Act ("CJA").  Mr. Savitt represented defendant during both pretrial plea negotiations and trial.

### C.    Trial

A four-day jury trial was held on December 7-10, 2009, during which the government offered extensive testimony by a cooperating witness and co-conspirator who was the getaway driver for the robberies, video surveillance footage and victim witness testimony providing direct evidence that a firearm was used or possessed in connection with the attempted Satellite Robbery, and defendant's sworn statements made in state court during his guilty plea to Second Degree Attempted Robbery for the Card Robbery.  *See United States v. Frederick*, No. 09-CR-258(KAM), 2010 U.S. Dist. LEXIS 58560, at *3-8 (E.D.N.Y. June 14, 2010); *United States v. Frederick*, 702 F. Supp. 2d 32, 38 (E.D.N.Y. 2009).  On December 10, 2009, the jury returned a verdict convicting the defendant on all six counts of the Indictment.

### D.    Post-Trial Motions

In January 2010, Mr. Savitt filed a timely motion for judgment of acquittal and an alternative motion for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively, challenging defendant's conviction on the § 924(c) firearms charge in connection with the attempted Satellite Robbery (Count Three).  The court denied the motions on June 14, 2010.  *See generally Frederick*, 2010 U.S. Dist. LEXIS 58560; (ECF No. 69, Order dated June 14, 2010).

As discussed in detail further below, the defendant requested new counsel in a *pro se* letter dated July 4, 2010, which the court granted. (*See* ECF No. 70, Letter from Defendant Requesting New Counsel.)

### E.    The Instant Rule 33 Motion

On March 9, 2012, defendant filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in a separate civil proceeding seeking to vacate and set aside the jury verdict based upon the ineffective assistance of Mr. Savitt during pretrial plea negotiations. (*See* Petition for Habeas Corpus, No. 12-CV-1171, *Frederick v. United States* (E.D.N.Y. Mar. 9, 2012), ECF. No. 1.) As an exhibit in support of his habeas corpus petition, defendant filed an affidavit. (Exhibit A to Petition for Habeas Corpus ("Def. Aff.").)

On March 23, 2012, because defendant had not yet been sentenced, the court converted defendant's habeas corpus petition into a Federal Rule of Criminal Procedure 33 motion for a new trial (the "Rule 33 motion"). (*See* Order dated Mar. 23, 2012 (citing *United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010)).) In addition, the court ordered (1) defendant to show cause why his failure to file the Rule 33 motion within 14 days after the jury verdict on December 10, 2009 amounted to "excusable neglect," *see* Fed. R. Crim. P. 33(b)(2), 45(b)(1)(B), which was filed by Ms. London on March 29, 2012 (*see* ECF No. 89,

Defendant's Response to Order to Show Cause); and (2) Mr. Savitt to file an affidavit in response to defendant's allegations, which was filed by Mr. Savitt on March 29, 2012 (*see* ECF No. 90, Attorney Affirmation in Response to Defendant's Allegations in His Habeas Petition ("Savitt Aff.")).  On April 9, 2012, the government filed a response to defendant's response to the order to show cause.  (*See* ECF No. 96, Government's Letter Regarding "Excusable Delay.")

On April 12, 2012, the court held an evidentiary hearing on defendant's Rule 33 motion, at which Mr. Savitt was the sole witness.  (*See* ECF No. 111, Transcript of Apr. 12, 2012 Hearing on Ineffective Assistance ("Tr.").)  The parties subsequently filed post-hearing briefs (*see* ECF No. 107, Government's Letter Opposing Pre-Sentencing Ineffective Assistance Claim ("Gov't Mem."); ECF No. 108, Supplemental Memorandum of Law in Support of Defendant's Rule 33 Motion ("Def. Mem.")) and replies (*see* ECF No. 109, Reply to Government's Brief Opposing Defendant's Rule 33 Motion ("Def. Reply"); ECF No. 110, Government's Letter in Reply to Defendant's Post-Hearing Submission ("Gov't Reply")).

## II.  STATEMENT OF RELEVANT FACTS

The following facts are undisputed unless otherwise indicated.

## A.    The Applicable Statutory Mandatory Minimum Sentences

Based on the two firearms charges in Counts Three and Five alone, defendant is subject to a statutory mandatory minimum sentence of 32 years imprisonment.  Specifically, there is a seven-year mandatory minimum term of imprisonment for brandishing a firearm in connection with the attempted Satellite Robbery for Count Three, *see* 18 U.S.C. § 924(c)(1)(A)(ii), and a 25-year mandatory minimum term of imprisonment for a second firearms conviction for Count Five, *see* 18 U.S.C. § 924(c)(1)(C).  These seven-year and 25-year mandatory terms of imprisonment must run consecutively to each other and any other term of imprisonment imposed on defendant.  *See id.* § 924 (c)(1)(D)(ii).

## B.    The Government's Plea Offer

In or around October 2009, approximately two months prior to trial, the government extended a plea offer to defendant and provided Mr. Savitt with a plea agreement (the "Plea Agreement").  (*See* Tr. 15-19; Def. Hr'g Ex. C ("Plea Agr.").)[3]  Although the Plea Agreement required the defendant to plead guilty by October 12, 2009 (Plea Agr. ¶ 2), Mr. Savitt understood that such date was a "soft date" and that it may be extended (Tr. at 21).

_____

[3]  All exhibits referenced herein were admitted into evidence at the April 12, 2012 hearing.

Pursuant to the terms of the Plea Agreement, defendant was required to plead guilty to (1) Count One for the Hobbs Act Robbery Conspiracy, which would subject defendant to a statutory maximum term of imprisonment of 20 years, and (2) Count Five for brandishing a firearm in connection with the Card Robbery, which would subject defendant to a statutory minimum term of imprisonment of seven years to run consecutive to any term of imprisonment imposed on Count One. (Plea Agr. ¶ 1.) The Plea Agreement also contained an estimated sentencing range under the Advisory Sentencing Guidelines of 161-180 months, based on the assumption that defendant was in Criminal History Category V. (*Id.* ¶ 2.) This estimated sentencing range included the 84-month mandatory minimum term of imprisonment for Count Five. (*Id.*)

On October 12, 2009, Mr. Savitt visited defendant at the Metropolitan Detention Center ("MDC") to discuss the Plea Agreement and showed defendant a copy of the Plea Agreement. (Tr. 19; Def. Aff. ¶ 3; Def. Hr'g Ex. A at 3.) Mr. Savitt also later provided defendant with a copy of the Plea Agreement. (Def. Aff. ¶ 3.) During his visit with the defendant, Mr. Savitt explained all of the provisions of the Plea Agreement, specifically that defendant would have to plead guilty to Counts One and Five and that he was facing six-and-a-half to eight years imprisonment on Count One with an additional seven

consecutive years on Count Five, for a total Advisory Sentencing Guidelines range of 13.5 to 15 years imprisonment. (*Id.* ¶ 4.) Mr. Savitt further advised defendant that the court had the discretion to sentence him to life in prison under the terms of the Plea Agreement, but that he would likely receive a sentence within the Advisory Sentencing Guidelines range. (Tr. 67-68, 92.)

### C. Defendant's Affidavit Regarding Trial Counsel's Advice

Defendant did not testify at the evidentiary hearing, but he submitted a sworn affidavit in which he asserts that he and Mr. Savitt spent approximately ten minutes discussing the Plea Agreement on October 12, 2009, and that he agreed to sign the Plea Agreement on that day. (Def. Aff. ¶¶ 4-5.) When the defendant, however, asked Mr. Savitt if the prison time he had already served in state custody on the same robbery would be credited to his federal sentence, Mr. Savitt responded that such credit was not part of the Plea Agreement and the defendant thus "needed more time to think about the offer." (*Id.* ¶ 5.) According to the defendant, at that October 12, 2009 meeting, Mr. Savitt did not express an opinion as to whether defendant should accept the plea offer. (*Id.* ¶ 6.)

Approximately two weeks after the October 12, 2009 meeting, on or about October 26, 2009, Mr. Savitt once again visited the defendant and advised him that the plea offer was

still on the table. (*Id.* ¶ 7.) Mr. Savitt then advised defendant that if was convicted at trial, defendant was facing six-and-a-half to eight years on the Hobbs Act Robbery Conspiracy in Count One and "12 years (7 years + 5 years)" on the two § 924(c) firearms charges in Counts Three and Five, which would run consecutive to any sentence imposed on Count One. (*Id.* ¶ 7.) Defendant therefore asserts that he believed that if he went to trial and was convicted on all six counts of the Indictment, he was facing 18.5 to 20 years imprisonment. (*Id.* ¶ 8.)

Additionally, defendant further believed that if he proceeded to trial and was convicted on all counts, the court would give him credit for the time he spent in state custody for the same robberies because "there would be no plea agreement to preclude it." (*Id.* ¶ 9.) Once defendant factored in this credit of approximately three years for his state custody (*see* Def. Mem. at 12), defendant believed that he would likely be facing about the same amount of prison time whether he pleaded guilty pursuant to the terms of the Plea Agreement or proceeded to trial and was convicted of all counts (Def. Aff. ¶ 9). Defendant thus rejected the plea offer. (*Id.*)

Defendant also asserts that Mr. Savitt did not inform him that his state court conviction in connection with the Card Robbery would be admitted into evidence at trial, which

defendant claims he first learned about at the Final Pretrial Conference held on November 17, 2009, the day the court read into the record its opinion regarding the issue. (*Id.* ¶ 10; Tr. 73); *see Frederick*, 702 F. Supp. 2d at 35-38. At the time defendant learned that his state court guilty plea would be admitted into evidence, defendant contends that "it was [his] understanding that the plea offer had been withdrawn." (Def. Aff. ¶ 11.)

Moreover, defendant states that Mr. Savitt did not inform him that if he went to trial and was convicted of Count Six for being a felon in possession of a firearm, he would be deemed an "Armed Career Criminal" under the Armed Career Criminal Act (the "ACCA"), *see* 18 U.S.C. § 924(e)(1), because he had three prior convictions for a "violent felony." (Def. Aff. ¶ 12.) The defendant does not state that he advised Mr. Savitt of any felony convictions beyond what was listed in his criminal history produced by the government in Rule 16 discovery. (*See* Def. Hr'g Ex. F ("Criminal History Report").) The sentencing consequences of an Armed Career Criminal designation are discussed in detail further below.

Finally, defendant states that had he known he "faced a sentence of 360 months to life, plus two mandatory consecutive sentences of 32 years (7 years plus 25 years), for a minimum

sentence of at least 82 years, I would have pled guilty instead
of going to trial." (Def. Aff. ¶ 13.)

### D. Trial Counsel's Testimony Regarding Pretrial Plea Negotiations and Advice to Defendant

In addition to submitting an affidavit, Mr. Savitt
testified credibly at the evidentiary hearing. Mr. Savitt began
representing the defendant in May 2009. (Tr. 8.) According to
out-of-court hourly worksheets submitted by Mr. Savitt in
connection with his final voucher for CJA compensation, Mr.
Savitt conferred with the defendant on at least twelve separate
occasions prior to trial, including May 12, July 3 and 8, August
18 and 27, October 6, 12, and 26, and November 4, 10, 17, and
23. (Tr. 13-15; Def. Hr'g Ex. A.)

Mr. Savitt testified that "it didn't take [him] long
to realize that this was a case where there was an extraordinary
amount of incriminating evidence," including video surveillance
of the attempted Satellite Robbery in which someone is holding
what appears to be a gun and is wearing the same clothing that
the defendant wore when he was arrested, victim and accomplice
witnesses, and defendant's state court plea of guilty to a
lesser-included offense for the Card Robbery. (Tr. at 8, 48-
49.)

Based on the nature of the evidence and charges
against the defendant and the potential "astronomical"

penalties, Mr. Savitt began to negotiate with the government in an effort to get the defendant as low a sentence as possible and below the statutory mandatory minimums to which he was subject through a cooperation agreement. (Tr. 49-52.) The defendant, however, "adamantly refused to entertain the possibility that he would cooperate." (Tr. 53.) Accordingly, in September 2009, Mr. Savitt attempted to arrange a "reverse proffer" session with the government as a "possible way to bridge the gap and to bring my client in so that he would have a very clear idea of the evidence against him, not only based on what I see, but based also on what [the government] told me." (Tr. 53-54; *see also* Def. Hr'g Ex. D, Email dated Sept. 18, 2009.) The defendant continued to refuse to cooperate after the reverse proffer session. (Tr. 53-54.)

When there was no longer any prospect for cooperation, Mr. Savitt entered into straight plea negotiations with the government, which resulted in the proposed Plea Agreement that Mr. Savitt received in early October 2009 and presented to the defendant. (*Id.*) Other than the Plea Agreement and a potential cooperation agreement, Mr. Savitt does not recall any other proposals by the government. (Tr. 26.)

When Mr. Savitt discussed the Plea Agreement with the defendant on October 12, 2009, Mr. Savitt testified that he told the defendant that the government was flexible with extending

the plea deadline.  (Tr. 54-55.)  The defendant never agreed to
sign the Plea Agreement because he was not interested in
pleading to a firearms charge, and the defendant told Mr. Savitt
"the proposed offer was unacceptable to him and that [Mr.
Savitt] should try to get him a better deal."  (Tr. 20, 22, 97.)
Mr. Savitt did not recall the defendant needing more time to
think about the plea offer during the October 12, 2009 meeting
before he rejected it.  (Tr. 22, 97.)  Specifically, in an email
dated the next day, October 13, 2008, Mr. Savitt informed the
government that the defendant would accept eight years
imprisonment, compared with the 13.5 to 15-year range of
imprisonment offered in the Plea Agreement.  (Tr. 25; Def. Hr'g
Ex. D.)  Mr. Savitt also testified that he advised defendant
that, for any sentence beyond a year received in connection with
a plea, defendant could receive up to a fifteen percent
reduction of the total sentence for good time.  (Tr. 22-23.)
Mr. Savitt further testified that he advised defendant that it
was possible he could be sentenced to life in prison under the
Plea Agreement.  (Tr. 61.)

On October 26, 2009, although Mr. Savitt does not have
a specific recollection of what he discussed with the defendant,
he believes that he informed the defendant that the government's
plea offer was still open.  Mr. Savitt testified that he
generally discussed three topics with the defendant when he met

with him:  (1) the benefits of the Plea Agreement; (2) the fact that the government would not agree "to meet him halfway" or, in other words, to accept less than what was contained in the Plea Agreement; and (3) "[the] overwhelming amount of evidence of guilt" if the defendant were to go to trial.  (Tr. 27; *see* Savitt Aff. ¶¶ 6-8.)

Specifically, Mr. Savitt testified that he explained to the defendant "a number of times" that if he were convicted of the two § 924(c) charges at trial (Counts Three and Five), "he would have to do 32 years mandatory minimum time consecutive to whatever he got on the robbery charges," even if the "judge was extremely favorably disposed to him, [and] that [the judge] would have no authority to go below the 32-year consecutive time for the firearms charges."  (Tr. 27-29, 84, 93-94.)[4]  Indeed, Mr. Savitt credibly testified that he repeatedly informed the defendant that he faced 32 years and the possibility of 50 years in prison if he were convicted of all counts at trial.  (Tr. 27-28, 37, 67, 84, 93.)  Although Mr. Savitt acknowledged that he did not write the defendant a letter outlining what his potential sentence would be if he were convicted at trial, Mr. Savitt testified that he "certainly told [the defendant] about

_____

[4] (*See also* Savitt Aff. ¶ 11 ("Frederick also elected to ignore my repeated warnings that he would be sentenced, in my estimation, to 32 years (7 plus 25 consecutive) solely on the two § 924(c) firearms charges against him.  I also informed him that the firearms sentences were mandatory and had to be imposed consecutively to the sentences on the underlying robbery and attempted robbery charges.").)

it" and that he reached out to the defendant's mother to tell her that "her son was making a terrible mistake" by rejecting the plea offer because "he's actually forfeiting his life." (Tr. 29-30.)

After the October 26, 2009 meeting, Mr. Savitt testified that the defendant was "adamant" about going to trial. (Tr. 30-31, 62.) Mr. Savitt recalled that the defendant expressed to Mr. Savitt that "he's going to go to trial unless he gets - - [the government] agree[s] to 10 years." (Tr. 31.) In an email dated October 27, 2009 in response to the government's inquiry as to whether there was any progress with the defendant regarding the plea offer, Mr. Savitt informed the government that "at least we're talking" and that the defendant would now accept ten years imprisonment "[b]ut wants more certainty than the plea agreement offers." (Def. Hr'g Ex. D.) In other words, the defendant "wanted a set 10 years," and Mr. Savitt advised him that the "the government would not agree to any specific term of years" and that there would be a guidelines range and the defendant would not know exactly what sentence he would receive until it was announced by the court. (Tr. 33-34, 63.)

Although he could not specifically recall what he advised the defendant, Mr. Savitt was "fairly certain" that he advised the defendant that, with credit for good time and a

deduction for going to a halfway house, the defendant may only serve approximately 12 years imprisonment under the Plea Agreement and that they were getting "pretty close" to the ten years defendant would accept. (Tr. 32-34.) Mr. Savitt did not, however, advise the defendant that he would receive credit for the time he spent in state custody because it was Mr. Savitt's understanding that "whatever credit he would get would only begin to accrue once he came into the federal system." (Tr. 32-33.)[5]

In a letter dated October 29, 2009, the government sent Mr. Savitt a letter stating that the government will withdraw its plea offer if defendant does not accept it by November 6, 2009. (Tr. 34; ECF. No. 14, Government's Letter Regarding Plea Agreement (Def. Hr'g Ex. E).) In or around the time Mr. Savitt met with the defendant on November 4, 2009, Mr. Savitt again discussed the incriminating evidence that would be used against the defendant at trial, including cooperators, surveillance video, and victim witnesses, as well as defendant's state court guilty plea, which was then the subject of a pending pretrial motion. (Tr. 36.)

---

[5] Mr. Savitt acknowledged that at the time he began representing the defendant in May 2009 in connection with the federal charges, he knew the defendant had been in state custody for the same offenses since the date of his initial arrest on May 14, 2006. (Tr. 9-10.)

After the court admitted defendant's state court plea allocution into evidence in a decision dated November 17, 2009, which the court read into the record at a conference when the defendant was present (Tr. 73)[6], the parties continued to engage in plea negotiations despite the government's letter dated October 29, 2009 withdrawing the plea offer. (Tr. 75.) Those plea negotiations consisted of defendant pleading guilty to the terms of the Plea Agreement or to cooperating with the government against members of the so-called "Bird Gang" in an effort to reduce his potential sentence even further. (Tr. 75-76.) In an email dated November 23, 2009 to the government, Mr. Savitt stated that the defendant "should have been in the film 'the defiant ones.' His 'new math' gives less weight to a 50-year prison term after trial than to 13 years after plea [sic]." (Def. Hr'g Ex. D.) This email "reflects [Mr. Savitt's] continued frustration in [defendant's] refusal to entertain . . . a plea, which would have limited his prison term significantly" (Tr. 76-77), and corroborates Mr. Savitt's testimony that he advised defendant that he faced significant sentencing exposure of fifty years if he was convicted after trial.

---

[6] In his affidavit, Mr. Savitt stated that he advised defendant that his state court guilty plea to the Card Robbery "would be admitted into evidence on a number of evidentiary grounds." (Savitt Aff. ¶ 9.)

Mr. Savitt credibly testified that he tried to persuade the defendant on several occasions to accept the government's plea offer. (Tr. 69; *see also* Savitt Aff. ¶ 4 ("[Defendant] obviously has a complete memory blackout as to my consistent efforts to persuade him . . . to accept the government's plea offer.").)[7] At some point in time, the defendant warned Mr. Savitt never to raise the topic of pleading guilty with the defendant again, and threatened to request new counsel if Mr. Savitt discussed the plea offer with him again. (Tr. 70, 97.) It was at this point that Mr. Savitt "abandoned all hope" that he could convince the defendant to accept a guilty plea and realized that "[i]t's his decision to go to trial, despite . . . repeated warnings [and] graphic explanations as to why he should have taken a plea." (Tr. 70-71.)

Mr. Savitt does not dispute that he did not the inform the defendant prior to trial of the possibility that he could be deemed an Armed Career Criminal under the ACCA if he were convicted of Count Six for being a felon in possession of a firearm, and that such a designation would subject the defendant

---

[7] In a CJA 26 Form, which an attorney submits to justify a compensation claim in excess of the maximum permitted under the CJA, Mr. Savitt checked a box indicating that communication with the client was a noteworthy factor in the number of hours billed and wrote that "[t]he client stubbornly insisted on proceeding to trial, despite overwhelming evidence of his guilt." (Def. Hr'g Ex. B at 2.) Mr. Savitt clarified that this statement referred to his frustration, sadness, and being perplexed that the defendant stubbornly refused to plead guilty pursuant to the Plea Agreement. (Tr. 70.)

to a mandatory 15-year sentence under 18 U.S.C. § 924(e)(1).
(Tr. 42-43, 46, 90-91.)  Indeed, Mr. Savitt testified that he
did not entertain the possibility that the defendant was an
Armed Career Criminal (Tr. 46) and that the issue never came up
in any discussions with the government (Tr. 67).  In his
affidavit, Mr. Savitt stated that the government did not inform
him of any of the defendant's additional prior convictions for
crimes of violence and that the defendant "did not advise [him]
of any prior convictions altogether." (Savitt Aff. ¶ 13.)[8]  In
the absence of this information, Mr. Savitt did not expect that
defendant could be designated an Armed Career Criminal. (*Id.*)
What was most important to Mr. Savitt during pretrial plea
negotiations was to ensure that his client did not "go to jail
for at least 32 years and most probably for in excess of 50
years." (Tr. 67.)

Finally, Mr. Savitt conceded that he did not advise
the defendant that the Card Robbery may be considered two
robberies under the Advisory Sentencing Guidelines because it
involved two victims.  (Tr. 28.)

---

[8] Mr. Savitt does acknowledge receiving a copy of defendant's
criminal history as of May 23, 2008 as part of Rule 16 discovery (Tr. 39-40)
and knowing from experience that such criminal histories do not always list
every prior conviction (Tr. 40).  Additionally, Mr. Savitt acknowledged
receiving a copy of the government's motion dated October 20, 2009 to admit
certain prior bad acts and convictions of the defendant pursuant to Federal
Rules of Evidence 404(b), 608(b), and 609(a), which Mr. Savitt opposed.  (Tr.
43-45.)

### E.    Defendant's *Pro Se* Request for New Counsel

In a *pro se* letter dated July 4, 2010, defendant requested new counsel on the basis that Mr. Savitt was ineffective for (1) "fail[ing] to notify defendant of [a]ppellate procedures," and (2) "fail[ing] to communicate strategy in efforts to better [defendant's] current legal state [and to] attack va[lid] insufficient points drawn by prosecution during (before and after) trial." (ECF No. 70, Letter dated July 4, 2010 from Defendant.)  Notably, defendant did not raise any issues in his letter suggesting that Mr. Savitt's representation during pretrial plea negotiations was ineffective or deficient.  Although Mr. Savitt did not agree with the allegations raised in defendant's letter, Mr. Savitt joined in defendant's application for new counsel "so that [defendant] can protect his rights appropriately perhaps with the assistance of a new set of eyes to help him out." (ECF No. 95, Transcript of July 14, 2010 Hearing at 3-4.)  The government did not take any position on defendant's request.  (*Id.* at 4.)

On July 21, 2010, the court ultimately appointed Joyce London, Esq. to represent defendant in connection with his sentencing, which was, at that time, scheduled for September 9, 2010.  After numerous adjournments, including several adjournments requested by defendant, defendant's sentencing was

adjourned to April 9, 2012, until it was adjourned once again
due to the Rule 33 motion.

**F.    The Presentence Investigation Report ("PSR")**

On February 7, 2011, the Probation Department issued
defendant's PSR, which noted two additional criminal convictions
for which defendant was adjudicated a youthful offender that
were not noted in his Criminal History Report. (*Compare* PSR
¶¶ 63-68 *with* Criminal History Report.)  Based on his entire
criminal history in the PSR, the Probation Department found that
defendant was subject to (1) enhanced sentencing as a Career
Offender, which increased defendant's Advisory Sentencing
Guidelines range for all counts from 168-210 months imprisonment
to 360 months to life, *see* U.S.S.G. §§ 4B1.1, 4B1.4; (PSR ¶¶ 58-
59), and (2) a 15-year statutory mandatory minimum term of
imprisonment under the ACCA, *see* 18 U.S.C. § 924(e)(1); (PSR
¶ 108).

Therefore, according to the PSR, for his convictions
on all counts in the Indictment, defendant is subject to an
Advisory Sentencing Guidelines imprisonment range of 360 months
to life and a 15-year statutory mandatory minimum sentence under
the ACCA, to be followed by consecutive statutory mandatory
minimum sentences of five years and 25 years for the two
§ 924(c) firearms convictions.  (PSR ¶¶ 108-09.)  The PSR thus

concludes that the total statutory mandatory minimum sentence is 45 years imprisonment.[9]  (PSR ¶¶ 108-09.)

## III. __DISCUSSION__

### A. __Timeliness of Defendant's Rule 33 Motion__

A defendant must bring a Rule 33 motion for a new trial within 14 days of the guilty verdict, unless the court finds that the late filing was the product of "excusable neglect" pursuant to Federal Rule of Criminal Procedure 45(b)(1)(B).  *See United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010).  Here, defendant was found guilty on December 10, 2009, and his current Rule 33 motion was not filed until March 9, 2012, more than two years after his guilty verdict and less than a month prior to his sentencing.  Defendant must thus establish that his untimely Rule 33 motion was due to "excusable neglect."

There are "four factors to be considered in connection with an assertion of 'excusable neglect' as justification for a missed judicial deadline:  (1) 'the danger of prejudice' to the

---

[9]  According to the Probation Department, although the PSR states that a firearm was "displayed" during the attempted Satellite Robbery and that defendant took a small silver gun from his waist area prior to entering the store (*see* PSR ¶ 10), the defendant is only subject to a five-year statutory mandatory minimum for possession of a firearm, *see* 18 U.S.C. § 924(c)(1)(A)(i); (PSR ¶ 42), and not the seven-year statutory mandatory minimum for brandishing a firearm, *see* 18 U.S.C. § 924(c)(1)(A)(ii).  Based on the evidence at trial, the court believes that the PSR's calculation is in error, and that defendant is subject to the seven-year mandatory minimum term of imprisonment for brandishing a firearm, for a total mandatory minimum sentence of 47 years imprisonment.  *See id.* § 924(c)(4) ("brandish" means "to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person").

party opposing the extension; (2) 'the length of the delay and its potential impact on judicial proceedings'; (3) 'the reason for the delay, including whether it was within the reasonable control' of the party seeking the extension; and (4) whether the party seeking the extension 'acted in good faith.'"  *Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.)*, 672 F.3d 113, 129 (2d Cir. 2011) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Inv. Servs. Co.*, 507 U.S. at 395 (footnote omitted).

Here, it is undisputed that within 14 days of the guilty verdict, defendant continued to be represented by Mr. Savitt, the counsel whom he now alleges was ineffective, and that Mr. Savitt filed timely motions pursuant to Rules 29 and 33 attacking the firearms charge in Count Three.  Additionally, it is undisputed that neither the defendant nor the government had knowledge that defendant may be deemed an Armed Career Criminal and subject to sentencing enhancements based on that designation, which is one of the grounds of defendant's Rule 33 motion, until the PSR was issued in February 2011, more than a year after the verdict.  Although it is disputed whether the defendant knew that he was facing a 32-year consecutive

statutory mandatory minimum - another ground for defendant's
Rule 33 motion - at the time of the verdict, the court finds
that defendant has demonstrated excusable neglect for failing to
file his Rule 33 motion within the required 14-day period after
the verdict.  *See Brown*, 623 F.3d at 113 n.5 (suggesting that
defendant could demonstrate excusable neglect for failing to
timely file a Rule 33 motion alleging ineffective assistance of
counsel where the allegedly ineffective attorney continued to
represent defendant during the 14-day time period and defendant
first discovered the grounds for his motion six months after the
verdict).

This finding does not, however, excuse defendant's
delay in waiting until March 9, 2012, less than one month prior
to his sentencing that had been adjourned on several previous
occasions at his request, to file his Rule 33 motion.  Indeed,
new counsel was appointed for the defendant in July 2010, and it
is undisputed by the defendant that he had full knowledge of all
the grounds for his Rule 33 motion at the time the PSR was
issued in February 2011.  Defendant does not offer any
explanation for the more than one-year delay in filing his Rule
33 motion between February 2011 and March 2012, other than his
current counsel's mistaken belief that a 28 U.S.C. § 2241 habeas
petition was the correct procedural mechanism for raising the

ineffective assistance claim, which would not be subject to the 14-day filing deadline of Rule 33. (*See* Def. Reply at 7-8.)

Despite defendant's delay in filing the instant motion, the court will nevertheless address the merits of defendant's ineffective assistance claim because of (1) the lack of prejudice to the government as defendant is not seeking a new trial, (2) the minimal disruption of pre-judgment proceedings as no new counsel needs to be appointed to represent defendant in connection with this claim, and (3) the fact that adjudication of defendant's ineffective assistance claim at this juncture of the case would be the most efficient resolution of defendant's claim, which could nevertheless eventually be brought in a 28 U.S.C. § 2255 habeas petition were this court to find the Rule 33 motion barred as untimely. *See Brown*, 623 F.3d at 113-14.

### B. Defendant's Ineffective Assistance of Counsel Claim

#### 1. The Legal Standards

It is well-settled that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process," and that "defendants are 'entitled to the effective assistance of competent counsel'" during plea negotiations. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (citations omitted). The Supreme Court's test for adjudicating ineffective assistance of counsel claims as described in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to such

claims arising from the plea negotiation process.  *See Lafler*, 132 S. Ct. at 1384.

"Under *Strickland*, in order to prevail on an ineffective-assistance-of-counsel claim, a defendant must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient,' so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,'; and (2) he must show 'that the deficient performance prejudiced the defense,' in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (citations omitted) (quoting *Strickland*, 466 U.S. at 687, 690, 694).  The court will discuss both of these prongs in turn.

### 2. Whether Trial Counsel's Performance Was Deficient

With respect to the performance prong, the defendant must show that counsel's representation "'fell below an objective standard of reasonableness'" under prevailing professional norms.  *Raysor v. United States*, 647 F.3d 491, 495 (2d Cir. 2011) (quoting *Strickland*, 466 U.S. at 688).  The *Strickland* standard is "'highly demanding' and 'rigorous,'" *Bennett*, 663 F.3d at 85 (citations omitted), and "[w]hen analyzing counsel's alleged deficiency, a court must 'indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Raysor*, 647 F.3d at 495 (quoting *Strickland*, 466 U.S. at 689).  In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.  Additionally, "'[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.'" *Raysor*, 647 F.3d at 495 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

In the context of a defense counsel's advice surrounding a plea offer, it is well-established that "the decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case. . . ." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (citation omitted) (internal quotation marks omitted).  The Second Circuit has recognized two benchmarks for the representation of a client who is deciding whether to accept a plea offer:

> On the one hand, defense counsel must give the client the benefit of counsel's professional advice on this crucial decision of whether to plead guilty.  As part of this advice, counsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as

well as the alternative sentences to which he will most likely be exposed.

On the other hand, the ultimate decision whether to plead guilty must be made by the defendant. And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer.

Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because representation is an art, and there are countless ways to provide effective assistance in any given case.

*Purdy v. United States*, 208 F.3d 41, 44-45 (2d Cir. 2000) (citations omitted) (internal quotation marks omitted); *see also Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999) ("'A defense lawyer in a criminal case has the duty to advise his client fully on *whether a particular plea to a charge appears to be desirable*.'" (quoting *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996))). In rendering advice to a client regarding a plea offer, counsel may take into account, *inter alia*, the following factors: (1) the defendant's chances of prevailing at trial; (2) the likely disparity in sentencing after a full trial as compared to a guilty plea; (3) whether defendant has maintained his innocence; and (4) the defendant's comprehension of the various factors that will inform his plea decision. *Purdy*, 208 F.3d at 45.

As initial matter, the court found Mr. Savitt's testimony to be credible and consistent with the record as a

whole, and his testimony was corroborated by emails, time sheets, and other exhibits admitted into evidence at the April 12, 2012 hearing. As the defendant did not testify at the hearing despite being provided the opportunity to do so on two separate days, the court could not assess his credibility, and his affidavit was filled with mostly self-serving statements that were not supported by any objective evidence. Accordingly, to the extent there are any factual disputes between Mr. Savitt and the defendant as to what advice Mr. Savitt did or did not provide the defendant, the court credits Mr. Savitt's testimony in the absence of credible evidence to the contrary. *See Purdy v. Zeldes*, 337 F.3d 253, 259 (2d Cir. 2003) ("[I]n most circumstances a convicted felon's self-serving testimony is not likely to be credible."); *Aessa v. Annets*, No. 06-CV-5830 (ARR), 2009 U.S. Dist. LEXIS 48642, at *22-23 (E.D.N.Y. June 10, 2009) (finding defendant's self-serving allegations of ineffective assistance to be "incredible" and crediting trial counsel's affirmation in the absence of credible evidence to the contrary).[10]

---

[10] As will be set forth more fully, *infra*, the court recognizes that a defendant's statement that he was unaware of the sentencing consequences of proceeding to trial may be supported by a disparity between the sentencing exposure with a plea and upon conviction after trial. *See Puglisi v. United States*, 586 F.3d 209, 216 (2d Cir. 2009). For the reasons herein, however, despite the disparity that exists in the instant case, the court credits Mr. Savitt's testimony that he repeatedly informed defendant that he could face seven years to life with a plea, and would face a mandatory minimum of 32 years and as much as 50 years or life if he were convicted of all counts after a trial.

Upon his appointment as CJA counsel, Mr. Savitt evaluated the strength of the government's case and soon arrived at the reasonable conclusion that "there was an extraordinary amount of incriminating evidence" against the defendant, including accomplice and witness testimony, video surveillance footage, and defendant's state court guilty plea. (Tr. at 8, 48-49.) Given that the defendant was facing a statutory mandatory minimum of 32 years on the firearms charges in addition to any sentence imposed for the Hobbs Act robberies, Mr. Savitt attempted to convince the defendant to cooperate with the government in the hopes of avoiding the severe statutory mandatory minimums that were applicable and of which he advised the defendant. Defendant adamantly refused to cooperate, however, even after a reverse proffer session with the government was arranged by Mr. Savitt.

With the prospect of cooperation off the table, Mr. Savitt negotiated the Plea Agreement with the government, pursuant to which the defendant would plead guilty to Counts One and Five and face a total sentencing range of 161-180 months, including the seven-year mandatory term of imprisonment for the firearms charge in Count Five. The defendant does not dispute that Mr. Savitt promptly advised the defendant of the plea offer on October 12, 2009, provided defendant with a copy of the Plea Agreement, and explained the terms of the plea offer, including

that defendant was facing 13.5 to 15 years of prison time. Additionally, Mr. Savitt appropriately advised the defendant that he could receive up to a fifteen percent reduction of any sentenced imposed over one year for good time and that although the court had the discretion to sentence him to life in prison under the Plea Agreement, he would likely receive a sentence within the Advisory Sentencing Guidelines range. (Tr. 67-68, 92.) The defendant, however, rejected the government's offer, stating that he would only accept a plea involving no more than eight to ten years of prison, a position that Mr. Savitt conveyed to the government. (*See, e.g.*, Def. Hr'g Ex. D (emails dated October 13, 2009 and October 27, 2009 from Mr. Savitt to the government).)

What followed were a series of meetings between Mr. Savitt and the defendant during which Mr. Savitt attempted to persuade the defendant to accept the government's plea offer by discussing the overwhelming evidence of defendant's guilt that would be introduced at trial and the severe statutory mandatory minimums that defendant was subject to if convicted. Indeed, Mr. Savitt accurately advised the defendant on numerous occasions that if he were convicted at trial he would receive at least a 32-year mandatory sentence for the two firearms charges, *in addition* to the sentence imposed for the robbery charges, thus leading to the likely possibility of a 50-year sentence.

Mr. Savitt also called the defendant's mother in an unsuccessful attempt to enlist her assistance in persuading her son to accept the government's plea offer. The defendant, however, expressed that he would only plead guilty if the government agreed to a fixed 10-year sentence, a position that Mr. Savitt advised him was untenable under the federal plea structure and the Advisory Sentencing Guidelines. Mr. Savitt then advised the defendant that the plea offer was close to his requested 10-year sentence after considering good time credit and a deduction for going to a halfway house, but defendant continued to refuse to accept the plea offer.

After November 17, 2009, the day defendant learned at a status conference that his state court plea allocution would be admitted into evidence at trial, the government's plea offer was still available to the defendant. Despite persistent efforts by Mr. Savitt, however, the defendant continued to resist any option short of trial. (*See* Def. Hr'g Ex. D (email dated November 23, 2009 from Mr. Savitt to the government stating that defendant "gives less weight to a 50-year prison term after trial than to 13 years after plea").) Indeed, at some point, defendant appears to have become so adamant about proceeding to trial that he threatened to request new counsel if Mr. Savitt even raised the issue of pleading guilty with him

again.  (Tr. 70-71.)  Once this happened, Mr. Savitt abandoned
his efforts to persuade the defendant to plead guilty.

In summary, the court finds that Mr. Savitt reasonably
evaluated and conveyed to the defendant the strength of the
government's case, promptly conveyed the terms of the
government's plea offer to the defendant, advised the defendant
of the overwhelming evidence against him that would be admitted
at trial, counseled the defendant that he would be subject to a
32-year statutory mandatory minimum and would likely receive
upwards of 50 years in prison if he were convicted at trial, and
repeatedly recommended that the defendant accept the
government's plea offer.  In light of all of these circumstances
at the time, and considering the "strong presumption that
counsel's conduct falls within the wide range of reasonable
professional assistance," *Strickland*, 466 U.S. at 669, the court
finds that Mr. Savitt's advice concerning the terms of the
government's plea offer, *see Purdy*, 208 F.3d at 45, the
strengths and weaknesses of the government's case, *see id.*, the
comparative sentencing exposure between standing trial and
accepting the plea offer, *see Gordon*, 156 F.3d 376 at 380, and
the desirability of the plea, *see Cullen*, 194 F.3d at 404, fell
within an objective standard of reasonableness.

In *Purdy*, the Second Circuit ruled that, even though
counsel "never advised [his client] in so many words" about

whether or not to plead guilty, counsel was effective because he advised his client on the factors necessary to allow the defendant to make an informed decision, such as the strength of the government's case and other benefits of pleading guilty. *Davis v. Greiner*, 428 F.3d 81, 89 (2d Cir. 2005) (alteration in original) (quoting *Purdy*, 208 F.3d at 47-48).  Here, not only did Mr. Savitt suitably advise the defendant as to overwhelming evidence against him and the other factors necessary for defendant to make an informed decision about whether or not to plead guilty, including the very significant sentencing disparity between the Plea Agreement and a conviction after trial, Mr. Savitt repeatedly counseled defendant to accept the government's plea offer because it was in his best interest. *Cf. Boria*, 99 F.3d at 497-98 (finding counsel ineffective where he "never gave his client any advice or suggestion as to how to deal with the" government's plea offer of one to three years, compared with 20 years to life after trial, where a conviction was all but certain).

Defendant argues that Mr. Savitt was ineffective because he failed to advise the defendant of the following:  (1) defendant would be subject to both seven-year and 25-year consecutive mandatory minimum sentences if he were convicted of the two § 924(c) charges at trial; (2) defendant's state court guilty plea to the Card Robbery would be admissible at trial;

(3) the court could and likely would credit defendant with the
time he already served in state custody for the same offense;
(4) the Card Robbery would be construed under the Advisory
Sentencing Guidelines to consist of two robberies because it
involved two victims; and (5) defendant would be subject to a
15-year statutory mandatory minimum sentence pursuant to the
ACCA if he were convicted of Count Six for being a felon in
possession of a firearm. (*See* Def. Mem. at 4; Memorandum of Law
in Support of Defendant's Motion Pursuant to 28 U.S.C. § 2241,
No. 12-CV-1171, *Frederick v. United States* (E.D.N.Y. Mar. 9,
2012), ECF. No. 1-3 at 10.) Each of these will be discussed in
turn.

First, as discussed above, the court finds the first
two grounds meritless in light of Mr. Savitt's credible and
consistent testimony, corroborated by hearing exhibits and the
docket. Mr. Savitt testified that he advised the defendant
repeatedly that he would be subject to a 32-year statutory
mandatory minimum sentence for the firearms charges, and also
that defendant's state court guilty plea would likely be
admissible at trial. (Tr. 27-29, 84, 93-94; Savitt Aff. ¶¶ 9,
11.) Indeed, on November 17, 2009, the defendant himself
learned that the court would admit his state court guilty plea
at trial, and yet the defendant continued to reject the plea
offer, which was still available to him at that time. (*See* Tr.

73, 75-77; Def. Hr'g Ex. D (email dated November 23, 2009 from Mr. Savitt to the government).)

Second, Mr. Savitt does not dispute that he did not advise defendant that he would receive credit for the time he spent in state custody because it was Mr. Savitt's "best understanding" that "whatever credit he would get would only begin to accrue once he came into the federal system." (Tr. 32-33.) It is uncertain what type of "credit" Mr. Savitt was referencing in this statement. On the one hand, it is correct that a defendant cannot receive "good time" credit under 18 U.S.C. § 3624(b) for time spent in state custody. *See Lopez v. Terrell*, 654 F.3d 176, 185, 190 (2d Cir. 2011). On the other hand, "the Sentencing Guidelines instruct the district court to adjust the defendant's federal sentence based on the time already served on his state sentence, since that period of custody cannot be credited by the [Bureau of Prisons] under [18 U.S.C.] § 3585(b)." *Id.* at 185 (citing U.S.S.G. § 5G1.3(b), cmt. n.2); (*see* PSR ¶ 109).

As the government correctly argues, however, any such credit is at the court's discretion. *United States v. Coppola*, 671 F.3d 220, 253 n.30 (2d Cir. 2012); (Gov't Reply at 3 n.1). The record does not support a finding that Mr. Savitt affirmatively (and erroneously) counseled defendant that he would not receive credit for his state custody if he accepted

the plea offer, but only advised defendant that such credit "was not part of the plea bargain" (Def. Aff. ¶ 5), which was an accurate interpretation of the Plea Agreement. *See* Plea Agr. ¶ 1 ("The sentences imposed by the Court may run consecutively to any other sentence the defendant is currently serving.").

Although the court may follow Advisory Guideline § 5G1.3(b) in crediting defendant's federal sentence, in light of all the circumstances, the court does not find that Mr. Savitt's failure to advise defendant of the likelihood that he would receive credit for the approximately three-and-a-half years he spent in state custody rises to the level of deficient performance. Mr. Savitt made numerous attempts to persuade defendant to accept the plea offer by explaining its significant benefits. In doing so, Mr. Savitt emphasized the significant evidence of defendant's guilt that would be admitted at trial as well as the 32-year statutory mandatory minimum and likely 50-year sentence defendant would face if he were convicted, and did not counsel defendant regarding the credit that he *might* receive at sentencing for the time he spent in state custody. Given defendant's insistence on receiving no more than a fixed 10-year sentence under the Plea Agreement, to which the government could not and did not agree, and the fact that any credit was in the court's discretion, Mr. Savitt's course of action was reasonable under the circumstances and the court will not second-guess Mr.

Savitt's strategy in how to advise his client that the plea offer was in his best interest. *See Purdy*, 208 F.3d at 45 (recognizing that "[c]ounsel's conclusion as to how best to advise a client . . . enjoys a wide range of reasonableness").

Third, Mr. Savitt conceded that he did not advise the defendant that, if he were convicted at trial of Count Two for the Card Robbery, it would be considered as two separate robberies under the Advisory Sentencing Guidelines because it involved two victims.  (Tr. 28; PSR ¶ 22.)  The effect of this result on defendant's sentencing range under the Advisory Sentencing Guidelines is an increase in defendant's total offense level by a single level.  (*See* PSR ¶¶ 50-61.)  Such a consequence pales in comparison to the strict 32-year statutory mandatory minimum that defendant faced were he to be convicted at trial.  As discussed above, considering Mr. Savitt's reasonable strategy in counseling defendant to accept the plea offer by emphasizing the strength of the government's case and the severe mandatory minimums that would be applicable if convicted – the two most important factors for the defendant to consider in making an informed choice - the court does not find that Mr. Savitt's failure in this regard was deficient.  Indeed, there is no requirement that counsel advise defendant as to every minuscule Advisory Sentencing Guidelines consequence of a conviction at trial, but only that counsel's performance fall

within the wide range of reasonable professional assistance in light of all the circumstances. *Raysor*, 647 F.3d at 495; *see also United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992) ("We do not suggest that, to comply with the Sixth Amendment, counsel must give each defendant anything approaching a detailed exegesis of the myriad arguably relevant nuances of the Guidelines.").

Finally, Mr. Savitt conceded at the hearing that he did not advise the defendant that he would be subject to a 15-year statutory mandatory minimum sentence under the ACCA if he were convicted of Count Six for being a felon in possession of a firearm. Under the ACCA, "a person who violates [18 U.S.C. § 922(g)] and has three previous convictions . . . for a violent felony . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). Mr. Savitt, however, contends that he never considered the possibility that defendant was an Armed Career Criminal, that such a designation never came up in discussions with the government, and that he was never informed of all of defendant's prior convictions for crimes of violence, either by the defendant or the government. (Tr. 42-43, 46-47, 67, 90-91; Savitt ¶ 13.)

Defendant argues that Mr. Savitt "should have known" prior to trial that defendant was subject to enhanced sentencing under the ACCA after a full consideration of the information the

parties knew at the time regarding defendant's criminal history. (Def. Mem. at 9.) As the government correctly argues (Gov't Mem. at 13; Gov't Reply at 2), however, Mr. Savitt could not have known prior to trial that the defendant had three prior violent felony convictions, as such information was not plainly evident or accessible prior to trial. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Defendant's Criminal History Report provided to Mr. Savitt as part of the government's Rule 16 discovery prior to trial only contained information as to one potentially "violent felony" under the ACCA. (*See* Criminal History Report at 9-11

(listing a 2005 conviction for attempted robbery).)[11]   In
addition, the government's motion dated October 20, 2009 to
admit certain prior bad acts and convictions at trial only
disclosed an additional potentially "violent felony."  (*See* Def.
Hr'g Ex. G at 4 (disclosing a 2003 conviction for attempted
robbery that was not listed in the Criminal History Report).)
It was not until the PSR was issued in February 2011 – more than
a year after defendant's trial and after Mr. Savitt was relieved
as counsel – that Mr. Savitt could have learned of a third
potentially "violent felony."  (*See* PSR ¶¶ 63-66 (uncovering an
additional 2002 conviction for robbery).)  The defendant himself
also did not advise Mr. Savitt of "any prior convictions
altogether."  (Savitt Aff. ¶ 13.)  Accordingly, Mr. Savitt

---

[11]   As listed in the Criminal History Report, defendant's
conviction for Criminal Possession of a Weapon in the Fourth Degree with
Intent to Use in violation of N.Y. Penal Law § 265.01(2) (*see* Criminal
History Report at 12-14) does not appear to constitute a "violent felony"
under the ACCA.  The ACCA defines a "violent felony" as "any crime punishable
by imprisonment for a term exceeding one year . . . that . . . involves
conduct that presents a serious potential risk of physical injury."  18
U.S.C. § 924(e)(2)(B).  Although Criminal Possession of a Weapon in the
Fourth Degree with Intent to Use presents a serious potential risk of
physical injury, *see United States v. Lynch*, 518 F.3d 164, 173 (2d Cir.
2008), such crime is a class A misdemeanor, N.Y. Penal Law § 265.01(2), and
is punishable by a sentence of imprisonment that "shall not exceed one year,"
N.Y. Penal Law § 70.15(1).  There is an exception in the sentencing statute
that provides for a sentence of imprisonment "of no less than one year" for a
conviction of Criminal Possession of a Weapon in the Fourth Degree as defined
in § 265.01(1) if the conviction was the result of a plea of guilty entered
in satisfaction of a charge for Criminal Possession of a Weapon in the Third
Degree as defined in N.Y. Penal Law 265.02(4).  N.Y. Penal Law § 70.15(1).
This exception does not apply to defendant, however, even though his plea of
guilty satisfied a charge under § 265.02(4), because defendant pleaded guilty
to Criminal Possession of a Weapon in the Fourth Degree in violation of
§ 265.01(2), not § 265.01(1).  Accordingly, because this conviction was not
punishable by a term of imprisonment exceeding one year, which is the
sentence that defendant received (PSR ¶ 69), it cannot constitute a "violent
felony" under the ACCA.

cannot be criticized for failing to advise defendant about the applicability of a sentencing enhancement that was unknowable to Mr. Savitt at the time.[12]

Even if Mr. Savitt was informed of all three of these convictions prior to trial, it was far from certain at the time that these convictions would actually be considered "violent felonies" under the ACCA and that defendant would be subject to the 15-year mandatory minimum at sentencing.[13]  Moreover, Mr. Savitt advised defendant numerous times that he was likely to receive 50 years in prison if he were convicted at trial, which is consistent with a sentencing prediction of 47 years that includes the 15-year mandatory minimum under the ACCA and the 32-year mandatory minimum for the two firearms charges.  In other words, Mr. Savitt correctly advised defendant as to his potential sentencing liability after a conviction, even if he

---

[12]  As the government correctly asserts, defendant's reliance on *United States ex rel. Hill v. Ternullo*, 510 F.2d 844 (2d Cir. 1975) is misplaced.  In *Ternullo*, the Second Circuit remanded the case to the district court for a hearing where there was "evidence that the defendant's plea . . . was made with reliance on erroneous legal advice about the ultimately knowable:  the length of time which, under the applicable statutes, he might be kept in prison."  *Id.* at 847.  Specifically, there was evidence that counsel failed to advise his client properly on the maximum and/or minimum term fixed by statute for an offense, which was a "misstatement of easily accessible fact."  *Id.*  Here, as discussed above, the applicability of the ACCA based on defendant's criminal record disclosed to Mr. Savitt was unknowable prior to trial.

[13]  Indeed, in a sentencing submission, defendant himself vigorously contests whether the 2002 and 2003 robbery convictions (*see* PSR ¶¶ 63-68) are "violent felonies" under the ACCA on a number of grounds, most significant of which is that defendant committed the two crimes when he was 16 years old and was adjudicated a youthful offender.  (*See* ECF. No. 83, Sentencing Memorandum on behalf of Defendant at 5-10.)

did not specifically tell defendant about the 15-year mandatory minimum under the ACCA.  *Cf. Gordon*, 156 F.3d at 380 (finding deficient performance only where counsel "grossly underestimate[d]" defendant's sentencing exposure by advising defendant he faced a maximum of ten years imprisonment when he was subject to a sentencing range of 21 to 27 years).

In light of all these circumstances at the time, including Mr. Savitt's effective advice to defendant regarding acceptance of the plea offer, the strong likelihood of conviction at trial, and the mandatory sentence of 32 years and the likely possibility of a 50-year sentence if convicted at trial, Mr. Savitt's failure to advise the defendant as to the potential applicability of the 15-year statutory mandatory minimum under the ACCA does not satisfy *Strickland*'s "highly demanding" and "rigorous" standard for deficient performance. *Bennett*, 663 F.3d at 85; *see Thomas v. United States*, 27 F.3d 321, 325-26 (8th Cir. 1994) (denying habeas petitioner's claim that counsel was ineffective during plea proceedings for failing to advise him that he could be sentenced as a career offender because, *inter alia*, at the time "it was impossible to know, or even predict, whether [defendant] would be sentenced as a career offender"); *Nwachia v. United States*, 891 F. Supp. 189, 196-99 (D.N.J. 1995) (finding no deficient performance where defense counsel erroneously estimated likely sentence and failed to

inform defendant that he might be classified as a career offender because defendant had been fully advised of the maximum sentence associated with the charges in the indictment); *Figueroa v. United States*, No. 91-CIV 1047, 1993 U.S. Dist. LEXIS 3593, at *17-19 (S.D.N.Y. Mar 24, 1993) (recognizing that counsel's erroneous determination of whether a defendant may be classified as a career offender is not "erroneous legal advice about the ultimately knowable" because a "defendant's criminal history is determined by factors which may not be clear at the time of the plea and which may be determined by the judge at sentencing" and "even if the Guideline range has been calculated and is known at the time of the plea, there still exists an inherent uncertainty as to its application.").

Accordingly, for the reasons set forth above, the defendant has not satisfied his burden in establishing that Mr. Savitt's performance was deficient under *Strickland*'s first prong.

### 3. Whether Defendant Has Established Prejudice

Even if any aspect of Mr. Savitt's performance could be found to be deficient, which it was not, defendant has not established that he suffered any prejudice. In order to show prejudice under *Strickland*'s second prong in the context of pleas, the "defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132

S. Ct. at 1384.  Specifically, where a defendant rejects a plea
offer and stands trial, he must "show that but for the
ineffective advice of counsel there is a reasonable probability
that the plea offer would have been presented to the court
(*i.e.*, that the defendant would have accepted the plea and the
prosecution would not have withdrawn it in light of intervening
circumstances), that the court would have accepted its terms,
and that the conviction or sentence, or both, under the offer's
terms would have been less severe than under the judgment and
sentence that in fact were imposed." *Id.* at 1385; *see also
Raysor*, 647 F.3d at 495 (defendant "must demonstrate a
reasonable probability that but for counsel's deficient
performance, he would have pled guilty instead of going to
trial"); *Cullen*, 194 F.3d at 405 (evaluating the "likelihood
that [the defendant] would have accepted the plea bargain if he
had been fully informed of its terms and accurately advised of
the likely sentencing ranges under the plea bargain and upon
conviction after trial").

In evaluating whether the prejudice prong has been
satisfied, the Second Circuit "requires some objective evidence
other than defendant's assertions" and has found that "a
significant sentencing disparity in combination with defendant's
statement of his intention [that he would have accepted the plea
offer] is sufficient to support a prejudice finding." *Pham v.*

*United States*, 317 F.3d 178, 182 (2d Cir. 2003); *see also*
*Gordon*, 156 F.3d at 381 (finding that a disparity between the
actual maximum sentencing exposure under the Advisory Sentencing
Guidelines and the sentencing exposure represented by
defendant's attorney "provides sufficient objective evidence -
when combined with a petitioner's statement concerning his
intentions - to support a finding of prejudice under
*Strickland*.").

Here, defendant claims in an affidavit that had he
known he "faced a sentence of 360 months to life, plus two
mandatory consecutive sentences of 32 years (7 years plus 25
years), for a minimum sentence of at least 82 years, I would
have pled guilty instead of going to trial."[14]  (Def. Aff. ¶ 13.)
As defendant did not testify at the hearing, the court cannot
make a credibility determination as to whether the defendant
would have accepted the plea bargain in accordance with his
statement.  *See Cullen*, 194 F.3d at 407 ("In determining whether
[defendant] has shown a reasonable probability that he would
have accepted the plea bargain if he had been informed of its
terms, the fact-finder will primarily have to make a

_____
[14]  Defendant's statement that he is facing "a minimum sentence of
at least 82 years" is inaccurate and incomprehensible.  As discussed above,
at most, defendant is subject to a minimum sentence of 47 years, consisting
of a 15-year mandatory sentence for being an Armed Career Criminal and a 32-
year mandatory sentence for the two § 924(c) firearms charges, which must run
consecutive to the 15-year mandatory sentence.  In determining whether any
sentence beyond the 47 years of statutory mandatory minimums is warranted,
the court must consider the sentencing factors set forth in 18 U.S.C.
§ 3553(a).

determination of [defendant's] credibility."); *see also Raysor*, 647 F.3d at 497 (granting evidentiary hearing for ineffective assistance claim and stating that "[n]umerous questions of fact or mixed fact and law must be resolved in [defendant's] favor if he is to prevail," including "whether but for counsel's alleged ineffectiveness, appellant would have accepted the government's plea offer and pled guilty"); *Watson v. United States*, 307 F. App'x 524, 527 (2d Cir. 2009) (summary order) ("The district court on remand should consider whether [defendant] shows prejudice based upon the relevant circumstances, including the credibility of his statement that he would have pleaded guilty . . . ."); *Purdy*, 208 F.3d at 49 (finding no "reasonable basis . . . to upset the district court's credibility determination of [defendant's] post-conviction testimony" as to whether he would have pleaded guilty); *Gordon*, 156 F.3d at 381 (finding prejudice prong satisfied where defendant testified in support of his ineffective assistance claim and there was a significant sentencing disparity).

    In light of the all of the credible evidence in the record, including the sentencing disparity between defendant's plea offer and the PSR and Mr. Savitt's credible testimony regarding his advice to the defendant regarding his sentencing exposure if convicted, the court finds that the defendant's self-serving statement in his affidavit is not credible and that

defendant has not suffered any prejudice.  *See United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005) ("This court . . . inquires into the record as a whole to determine whether a reasonable probability exists that absent counsel's error, the outcome of the proceeding would have been different.").

As discussed above, defendant was advised on numerous occasions of the overwhelming evidence against him if he were to proceed to trial, including the testimony of an accomplice and an eyewitness, video surveillance footage, and his state court guilty plea.  Most importantly, defendant was repeatedly informed of the significant benefits of the plea offer and that he would face at best a 32-year minimum sentence and very likely a 50-year sentence if he were convicted at trial.  Despite all the advice and persistent efforts by Mr. Savitt to persuade defendant to plead guilty, defendant made the fully-informed choice to reject a 13.5 to 15-year sentence under the Plea Agreement and to risk a 50-year prison sentence by proceeding to trial, which is precisely what the defendant now faces at sentencing.  Indeed, defendant at one point prior to trial even threatened to request new counsel if Mr. Savitt mentioned the prospect of pleading guilty to him again.  Short of improperly coercing a plea, there does not appear to be anything more that Mr. Savitt could have ethically and legitimately done to fully inform defendant of the risks of trial and to counsel him to

plead guilty, which is a decision that ultimately must be made only by the defendant. *See Purdy*, 208 F.3d at 45.

As Mr. Savitt stated in his affidavit, which is consistent with his credible testimony:

> [Defendant] obviously has a complete memory blackout
> as to my consistent efforts to persuade him, almost
> from the moment I was appointed to represent him, to
> consider a plea and later to accept the government's
> plea offer. The reason I am entirely clear about my
> efforts to have [defendant] see the foolishness in
> proceeding to trial is my utter amazement that he
> steadfastly refused even to consider a plea
> disposition, and instead, decided to take the risk of
> spending the better part of his life in prison by
> proceeding to trial. . . . I still am perplexed why
> this young man decided it was worth gambling on a
> trial in which, barring some supernatural event, the
> government would certainly prove all the charges
> against him.

(Savitt Aff. ¶¶ 4-5, 12.)

Accordingly, on these facts and despite the sentencing disparity between defendant's plea offer and his post-conviction sentencing exposure – of which defendant was fully informed prior to trial, the court finds that the defendant has failed to establish any prejudice under *Strickland*'s second prong. *See Arteca*, 411 F.3d at 322 (finding that defendant's "self-serving and conclusory statement . . . is insufficient in itself to show prejudice in the context of guilty pleas"); *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) ("The fact that a defendant has a change of heart prompted by his reevaluation of . . . the penalty that might be imposed is not a sufficient

reason to permit withdrawal of a plea." (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992))).

### 4. The Government's Dismissal of Count Six

As discussed above, it is undisputed that the defendant was not advised of the applicability of the 15-year statutory mandatory minimum under the ACCA prior to trial because his Criminal History Report did not disclose two prior robbery convictions. In order to alleviate any potential prejudice associated with the 15-year statutory mandatory minimum and enhanced sentencing as an Armed Career Criminal, *see* 18 U.S.C. §§ 924(e), 922(g); U.S.S.G. §§ 4B1.1, 4B1.4(a); (PSR ¶¶ 15, 59, 108), the government has stated that it intends to dismiss Count Six, the felon-in-possession count, pursuant to Federal Rule of Criminal Procedure 48(a) at sentencing. (Gov't Mem. at 15; Gov't Reply at 4.)

The court considers the government to have committed to making the motion to dismiss Count Six. As discussed above, the court found that defendant has not established an ineffective assistance of counsel claim based on Mr. Savitt's failure to advise defendant of the applicability of the ACCA, which was unknowable prior to trial. Although defendant's right to effective assistance of counsel has not been violated, the

court will grant the government's motion when it is formally made prior to sentencing.[15]

## CONCLUSION

For the reasons set forth above, the defendant's Rule 33 motion for a new trial based on the ineffective assistance of counsel during pretrial plea negotiations is denied in its entirety. The defendant's sentencing scheduled for June 19, 2012 shall proceed accordingly. By June 12, 2012, the government shall move to dismiss Count Six, and the defendant shall submit any objection by June 14, 2012.

Dated:    June 5, 2012
          Brooklyn, New York

                                    /s/
          _____
          KIYO A. MATSUMOTO
          United States District Judge
          Eastern District of New York

---

[15]  Had the court found that Mr. Savitt was ineffective for failing to advise the defendant as to the applicability of the ACCA, the court would find that the government's dismissal of Count Six is an appropriate remedy. *See Lafler*, 132 S. Ct. at 1389 ("If the showing [of prejudice] is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between."). A dismissal of Count Six would alleviate any prejudice as defendant would only be subject to the 32-year mandatory minimum that he was fully informed of when he decided to reject the plea offer and proceed to trial, and would not be subject to the additional 15-year mandatory minimum under the ACCA of which he was not informed.